[S. F. No. 21609. In Bank. May 28, 1964.]

JOEL FORT, M.D., Plaintiff and Respondent, v. CIVIL SERVICE COMMISSION OF THE COUNTY OF ALAMEDA et al., Defendants and Appellants.

J. F. Coakley, District Attorney, Douglas R. Dunning, and Richard J. Moore, Assistant District Attorneys, Thomas J. Fennone and John W. Noonan, Deputy District Attorneys, for Defendants and Appellants.

Bertram McLees, Jr., County Counsel (San Diego), Robert G. Berrey, Assistant County Counsel, and Lawrence Kapiloff, Deputy County Counsel, as Amici Curiae on behalf of Defendants and Appellants.

Albert M. Bendich for Plaintiff and Respondent.

Leon M. Cooper, Thomas E. Headrick, Marvin S. Shapiro, Arthur Brunwasser, Marshall W. Krause, Gerald D. Marcus, Daniel N. Loeb, Schofield, Hanson, Bridgett, Marcus & Jenkins, Rt. Rev. James A. Pike and Lemaire & Mohi as Amici Curiae on behalf of Plaintiff and Respondent.

GIBSON, C. J.—This case involves the validity of section 41 of the Charter of Alameda County, which provides: ''No officer or employee of the County in the classified civil service shall directly or indirectly make, solicit or receive, or be in any manner concerned in making, soliciting or receiving any assessment, subscription, or contribution for any political party or any political purpose whatsoever. No person holding a position in the classified civil service shall take any part in political management or affairs in any political campaign or election, or in any campaign to adopt or reject any initiative or referendum measure other than to cast his vote or to privately express his opinion. Any employee violating the provisions of this section may be removed from office.''

Joel Fort, M.D., is the Director of the Center for Treatment and Education on Alcoholism, County of Alameda, a position within the county's classified civil service system. His salary is budgeted and paid by the county, which is then fully reimbursed by the state for this expenditure. The board of supervisors has jurisdiction over the hiring and dismissal of a person in Fort's position.

In April 1962 Fort, who was aware of section 41 of the charter, became chairman of a speakers' bureau for the Contra Costa committee to reelect Governor Brown, and this fact was reported to the board by Fort's superior, the medical director of the county.[1] After a hearing in June 1962 the board dismissed Fort, determining that his activity constituted taking part in political management and affairs in a political campaign or election in violation of section 41 of the charter.[2] In July the county civil service commission, after a hearing, affirmed the board's resolution.

---

[1]Fort's activity in this connection was limited to a total of six hours and was on his own time, apart from the hours and duties of his employment with the county.

[2]It also appears that in January and February 1962 Fort had sought nomination as a candidate for Congress and was then informed by the county director of personnel that, under section 41, Fort could not

 Fort then commenced this proceeding in the superior court for a writ of mandate, and the trial court concluded that section 41 is unconstitutional and directed that Fort be reinstated to his position. Defendants have appealed. We have concluded that the portion of section 41 invoked against Fort is unconstitutional in that it unreasonably abridges fundamental rights of the county's classified civil service employees.

It is unquestionable that section 41 imposes restrictions upon public officers and employees which substantially affect their rights as citizens. It is true that the provision does not directly prohibit a person from engaging in the proscribed activities, but he may do so only at the penalty of losing his employment and its attendant benefits. Although it has been held that one employed in public service does not have a constitutional right to such employment (*Board of Education* v. *Swan* (1953) 41 Cal.2d 546, 556 [261 P.2d 261]), it is settled that a person cannot properly be barred or removed from public employment arbitrarily or in disregard of his constitutional rights (*Cramp* v. *Board of Public Instruction, Orange County, Fla.* (1961) 368 U.S. 278, 288 [82 S.Ct. 275, 7 L.Ed.2d 285, 292-293]; *Torcaso* v. *Watkins* (1961) 367 U.S. 488, 495-496 [81 S.Ct. 1680, 6 L.Ed.2d 982, 987]; *Wieman* v. *Updegraff* (1952) 344 U.S. 183, 191-192 [73 S.Ct. 215, 97 L.Ed. 216, 222-223]; cf. *Danskin* v. *San Diego Unified Sch. Dist.* (1946) 28 Cal.2d 536, 545-546 [171 P.2d 885] [holding that privilege of using state property could not be withheld upon the basis of a condition amounting to an unconstitutional restraint of speech and assembly]; *Sherbert* v. *Verner* (1963) 374 U.S. 398, 404-406 [83 S.Ct. 1790, 10 L.Ed.2d 965, 970-972]). The court stated in *Wieman* that "constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory" and it was said in *Torcaso*, "The fact, however, that a person is not compelled to hold public office cannot possibly be an excuse for barring him from office by state-imposed criteria forbidden by the Constitution."

 The freedom of the individual to participate in political activity is a fundamental principle of a democratic society and is the premise upon which our form of government is based. Our state Constitution declares, "All political power

retain his employment if he engaged in such activity. Fort replied that he did not plan to pursue the nomination. The board did not include Fort's candidacy as a ground for his dismissal.

is inherent in the people'' (Const., art. I, § 2), and the First Amendment of the federal Constitution establishes the right of every citizen to engage in political expression and association. (See *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254 [84 S.Ct. 710, 720-721, 11 L.Ed.2d 686]; *Sweezy* v. *State of New Hampshire* (1957) 354 U.S. 234, 250 et seq. [77 S.Ct. 1203, 1 L.Ed.2d 1311, 1324 et seq.].) In this state both statutes and judicial decisions have recognized the fundamental right of citizens generally not only to vote but also to hold office (Gov. Code, §§ 274, 275; *Carter* v. *Commission on Qualifications of Judicial Appointments* (1939) 14 Cal.2d 179, 182 [93 P.2d 140]; *People* v. *Washington* (1869) 36 Cal. 658, 662), and the fundamental right of employees in general to engage in political activity without interference by employers (Lab. Code, § 1101; *Lockheed Aircraft Corp.* v. *Superior Court* (1946) 28 Cal.2d 481, 486 [171 P.2d 21, 166 A.L.R. 701]).[3]

 The restrictions appearing in section 41 of the charter are framed in broad language and cover a wide range of activities. As we have seen, the section declares that a person holding a position in the classified civil service shall not take ''any part in political management or affairs in any political campaign or election,'' including a campaign to ''adopt or reject any initiative or referendum measure.'' Thus the section applies not only to all activities during a political campaign which amount to managerial direction, for example acting as chairman of a campaign, but, in view of the word ''affairs,'' is broad enough to prevent employees from running for public office or from campaigning on behalf of other candidates. The prohibition is also of sufficient breadth to apply to political activity concerning all propositions on the ballot, even including measures which would directly and personally affect the employee such as one relating to his own salary or working conditions. Because of the broad and general terms of the section, it is not clear what additional con-

---

[3]Section 274 of the Government Code provides that an elector has no rights or duties beyond those of a citizen not an elector, *except* the ''right and duty of holding office'' and voting. Section 275 declares that unless specifically provided otherwise, every elector is ''eligible to the office'' for which he is an elector.

Section 1101 of the Labor Code provides: ''No employer shall make, adopt, or enforce any rule, regulation, or policy: (a) Forbidding or preventing employees from engaging or participating in politics or from becoming candidates for public office. . . .''

duct may be proscribed, for example membership in a political organization or attendance at political gatherings, and likewise unclear is the extent to which an employee is free to voice his opinion on issues and candidates. The only express limitation on the sweeping prohibition is contained in the phrase "other than to cast his vote or to privately express his opinion."

It should be emphasized that the restrictions do not relate solely to measures and candidates in the particular county but to all elections, including national and state elections and those conducted by local entities other than Alameda County. Moreover, section 41 is not limited to conduct regarding partisan offices and issues but relates equally to all candidates and questions, whether or not identified with a political party.

In urging the validity of section 41 the county relies principally on *United Public Workers* v. *Mitchell* (1947) 330 U.S. 75, 94 et seq. [67 S.Ct. 556, 91 L.Ed. 754, 769 et seq.], where, by a 4-to-3 decision, the United States Supreme Court upheld restrictions on political activities by federal officers and employees set forth in the Hatch Act. That act restricted the taking of "any active part in political management or in political campaigns." (5 U.S.C.A. [Cum. Supp. 1950] § 118i (a).) Unlike the section before us, however, that statute, as the court emphasized, contained additional provisions making it clear that the act was aimed only at active participation in partisan politics and did not restrict public expressions on public affairs and personalities so long as the activity did not involve an "objective of party action" and was not directed toward "party success." It was expressly provided in the act that it did not prevent political activity for or against a candidate not representing a "party" or in connection with any question not "specifically identified" with a "political party" and that questions relating to constitutional amendments, referendums, approval of municipal ordinances, and "others of a similar character" were not to be deemed as "specifically identified" with a political party. (5 U.S.C.A. [Cum. Supp. 1950] § 118n.)

It was concluded in *Mitchell* that the restrictions were an effort by Congress "within reasonable limits" to promote the efficiency, integrity, and discipline of the federal public service by eliminating the danger that the discharge of official duty would be motivated by political considerations rather than the welfare of the public. However, it was recog-

nized that the right to engage in political activities is a fundamental one under the federal Constitution, and it was stressed that the court was not expressing any opinion with respect to issues beyond those presented by the statute there involved. (330 U.S. at pp. 92, 94-96 [67 S.Ct. 556, 91 L.Ed. at pp. 769-771].)

Since the decision in *Mitchell*, the United States Supreme Court has on several occasions applied the principle that where the curtailment of First Amendment rights is concerned the state may prevail only if it can show that it has a "compelling" interest in limiting those rights. (*Sherbert* v. *Verner, supra,* 374 U.S. 398, 406-407 [83 S.Ct. 1790, 10 L.Ed.2d 965, 972]; *Gibson* v. *Florida Legislative Investigation Com.* (1963) 372 U.S. 539, 546 [83 S.Ct. 889, 9 L.Ed. 2d 929, 935]; *N.A.A.C.P.* v. *Button,* 371 U.S. 415, 438-440 [83 S.Ct. 328, 9 L.Ed.2d 405, 421-422]; *Bates* v. *City of Little Rock* (1960) 361 U.S. 516, 524 [80 S.Ct. 412, 4 L.Ed.2d 480, 486].) In the most recent of these decisions (*Sherbert* v. *Verner,* 374 U.S. at p. 406 [83 S.Ct. 1790, 10 L.Ed.2d at p. 972]), it was said, "It is basic that no showing merely of a rational relationship to some colorable state interest would suffice; in this highly sensitive constitutional area, '[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation.' "

The United States Supreme Court and this court have also made it clear in recent decisions that, even if a compelling state purpose is present, the restriction must be drawn with narrow specificity. (*N.A.A.C.P.* v. *Button, supra,* 371 U.S. 415, 433 [83 S.Ct. 328, 9 L.Ed.2d 405, 418]; *Shelton* v. *Tucker* (1960) 364 U.S. 479, 488-490 [81 S.Ct. 247, 5 L.Ed.2d 231, 237-238]; *Talley* v. *State of California* (1960) 362 U.S. 60, 63 et seq. [80 S.Ct. 536, 4 L.Ed.2d 559, 562]; *Wollam* v. *City of Palm Springs* (1963) 59 Cal.2d 276, 286-288 [29 Cal. Rptr. 1, 379 P.2d 481].) In this connection it was stated in *Sherbert* v. *Verner, supra,* 374 U.S. 398, 407 [83 S.Ct. 1790, 10 L.Ed.2d 965, 972], that "it would plainly be incumbent upon [the state] to demonstrate that no alternative forms of regulation" would combat the asserted abuses without infringing on First Amendment rights.

The principles set forth in the recent decisions do not admit of wholesale restrictions on political activities merely because the persons affected are public employees, particularly when it is considered that there are millions of such

persons.[4] It must appear that restrictions imposed by a governmental entity are not broader than are required to preserve the efficiency and integrity of its public service.

No one can reasonably deny the need to limit some political activities such as the use of official influence to coerce political action, the solicitation of political contributions from fellow employees, and the pursuit of political purposes during those hours that the employee should be discharging the duties of his position. A strong case, we think, can also be made for the view that permitting a public employee to run or campaign against his own superior has so disruptive an effect on the public service as to warrant restriction. It is, of course, possible to draw a restrictive provision narrowly in order to deal specifically with such abuses.

However, the more remote the connection between a particular activity and the performance of official duty the more difficult it is to justify restriction on the ground that there is a compelling public need to protect the efficiency and integrity of the public service. It is thus at least questionable whether restrictions relating to issues and candidates in jurisdictions other than the employing entity can be justified even so far as concerns partisan activities. Regardless of how that question should be answered, we are satisfied that, in the light of the principles applicable to freedom of speech and the related First Amendment rights, no sound basis has been shown for upholding a county provision having the breadth of the one before us, which, as we have seen, applies alike to partisan and nonpartisan activities and not only to county elections but to all elections and which is not narrowly drawn but is framed in sweeping and uncertain terms that except only the right to vote and to express opinions ''privately.''

■ The county, urging us to determine the validity of section 41 only as applied to the particular facts of this case, invokes the general rule that one may not question the constitutionality of a provision as it may be applied to others. (*United States* v. *Raines* (1959) 362 U.S. 17, 21-22 [80 S.Ct. 519, 4 L.Ed.2d 524, 529-530]; *In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305]; *People* v. *Perry* (1931) 212 Cal. 186, 191 [298 P. 19, 76 A.L.R. 1331].) As

[4]It has been reported that, including members of the armed services, public employees at all levels of government number 12,000,000 persons out of a total of 75,000,000 in civilian and military employment. (The Recorder, San Francisco, Cal., May 14, 1964, p. 1.)

*Raines* itself recognizes, however, there are several exceptions to this rule. (362 U.S. 17, 22-23 [80 S.Ct. 519, 4 L.Ed.2d 524, 529-530]; see also *Barrows* v. *Jackson* (1953) 346 U.S. 249, 257 [73 S.Ct. 1031, 97 L.Ed. 1586, 1595-1596]; *Mendoza* v. *Small Claims Court* (1958) 49 Cal.2d 668, 670 [321 P.2d 9]; *People* v. *Building Maintenance etc. Assn.* (1953) 41 Cal.2d 719, 726 [264 P.2d 31]; *Quong Ham Wah Co.* v. *Industrial Acc. Com.* (1920) 184 Cal. 26, 30 [192 P. 1021, 12 A.L.R. 1190].)

One important exception is that, where a provision restricting free speech and the free dissemination of ideas is involved, a court in considering the claim of overbreadth and vagueness may take into account the operation of the provision as to factual situations other than the one at bar. (*N.A.A.C.P.* v. *Button, supra,* 371 U.S. 415, 432-433 [83 S.Ct. 328, 9 L.Ed.2d 405, 417-418]; *Thornhill* v. *Alabama* (1940) 310 U.S. 88, 96-99 [60 S.Ct. 736, 84 L.Ed. 1093, 1098-1100]; *In re Blaney* (1947) 30 Cal.2d 643, 650-653 [184 P.2d 892]; *In re Porterfield* (1946) 28 Cal.2d 91, 115 [168 P.2d 706, 167 A.L.R. 675]; *In re Bell* (1942) 19 Cal.2d 488, 495-496 [122 P.2d 22].) Although the exception has usually been resorted to in connection with criminal statutes, the principles applied to protect free speech against infringement by criminal statutes may be of equal or greater importance in regard to noncriminal statutes. (See *New York Times Co.* v. *Sullivan, supra,* 376 U.S. 254 [84 S.Ct. 710, 724-725, 11 L.Ed.2d 686].) The exception in question is appropriate wherever a provision too broad or vague, if allowed to stand, would amount to a coercive restraint on free speech, as would the one before us since it provides for dismissal from employment in the event of a violation. It should be noted that the court in *In re Blaney, supra,* 30 Cal.2d 643, 653-654, applied the exception with respect to a statute which did not impose criminal penalties but provided for injunctive relief, reasoning that the statute was coercive because an injunction could be enforced by contempt proceedings.

 Where a provision encompasses both valid and invalid restrictions on free speech and its language is such that a court cannot reasonably undertake to eliminate its invalid operation by severance or construction, the provision is void in its entirety regardless of whether the particular conduct before the court could be constitutionally regulated and whether there is a severability clause applicable to the provision. (See, e.g., *Thornhill* v. *Alabama, supra,* 310 U.S. 88, 96-

99 [60 S.Ct. 736, 84 L.Ed. 1093, 1098-1100]; *In re Blaney, supra,* 30 Cal.2d 643, 655-656.)

The Charter of Alameda County contains a general severability clause (section 71), but it is apparent that the overbreadth and uncertainty of the part of section 41 invoked against Fort cannot be eliminated by the severance of language. For example, nothing can be severed from the second sentence of the section to limit its application to partisan activities. The only way in which a limitation of section 41 to a proper scope could be attempted is by reading into it numerous qualifications and exceptions, and this would amount to a wholesale rewriting of the provision which the courts cannot reasonably be expected to undertake. It should be noted that this is not an area in which invalidation of a provision will eliminate the only legislation governing an important subject since the Legislature in 1963 enacted provisions applicable to Alameda County which relate to political activities by local public employees. (Stats. 1963, ch. 2000, pp. 4078-4080; Gov. Code, §§ 3201-3205.)[5]

We conclude that the second sentence of section 41 of the charter is void in its entirety.[6] It follows that the trial court correctly ordered that Fort be reinstated to his position, and it is unnecessary to consider other contentions made.

The judgment is affirmed.

Traynor, J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.

---

[5]The 1963 legislation applies uniformly to all officers and employees of a "local agency," including charter as well as noncharter counties and cities, and it restricts political activities in a much narrower manner than does section 41 of the charter.

[6]No complaint is made as to the only other part of section 41 restricting political activities, namely, the first sentence, which relates to political contributions, and the second sentence of the section is readily severable from the remainder of the section.