[Civ. No. 25126.    First Dist., Div. Three.    Mar. 20, 1969.]

STEVEN HAMILTON et al., Plaintiffs and Appellants, v. THE MUNICIPAL COURT FOR THE BERKELEY-ALBANY JUDICIAL DISTRICT OF ALAMEDA COUNTY, Defendant and Respondent; THE PEOPLE, Real Party in Interest and Respondent.

Marshall W. Krause, Paul N. Halvonik, M. Laurence Popof-
sky and Richard L. Goff for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr.,
Assistant Attorney General, Robert R. Granucci and Clifford
K. Thompson, Jr., Deputy Attorneys General, for Defendant
and Respondent and for Real Party in Interest and Re-
spondent.

SALSMAN, J.—On November 30, 1966 a complaint was
filed in the Municipal Court for the Berkeley-Albany Judicial
District which charged the defendants, who are the appellants
here, with violating Penal Code sections 372 (committing a
public nuisance) and 602 (unlawful occupation of real prop-
erty or structures). These charges grew out of a widely pub-
licized demonstration on the campus of the University of
California at Berkeley, protesting the presence of recruiters
for the armed services of the United States.

At a pretrial hearing the court, in an effort to secure a fair
trial for the parties, issued an order, the pertinent parts read-
ing thus: "A. The parties shall not, directly or indirectly,
release to any news media information or opinion concerning
the trial or any issue likely to be involved therein, other than
the date and place of trial, the names of the parties and

counsel, the contents of the complaint, and the plea of defendants. Specifically, and without limitation, there shall be no public statements or releases concerning the merits of the complaint, the evidence or arguments to be adduced by either side, or trial tactics or strategy. B. This order shall apply inter alia to the parties and their counsel, to all law enforcement agencies, to the Regents of the University of California and their agents and employees and to the Associated Students of the University of California, their members and affiliated organizations. The court recognizes the difficulties inherent in framing any order in this matter and expects the full cooperation of the parties and their counsel in carrying out the letter and the spirit of this order. The court will entertain motions for any further orders that may be necessary or desirable in this matter.''

Trial was set for Monday, January 16, 1967. On Friday, January 13, in front of the municipal court building where the trial was to take place, the defendants held a press conference, and issued a statement to the news media for immediate release. The statement condemned the court's pretrial order and openly and deliberately violated its restrictions.

The defendants were convicted of the charges against them. They were then charged with violation of Penal Code section 166 subdivision 4 (criminal contempt) for their wilful disobedience of the pretrial order. They sought prohibition from the Superior Court of Alameda County to prevent their prosecution. The writ was denied. This appeal followed.

Appellants first argue there was no justification for the municipal court's pretrial order because it is an unconstitutional restriction upon their right of free speech. They cite and rely upon *Bridges* v. *California* (1941) 314 U.S. 252 [86 L.Ed. 192, 62 S.Ct. 190, 159 A.L.R. 1346]; *Fort* v. *Civil Service Com.*, 61 Cal.2d 331, 337-338 [38 Cal.Rptr. 625, 392 P.2d 385], and *Bagley* v. *Washington Township Hospital Dist.*, 65 Cal.2d 499, 506-509 [55 Cal.Rptr. 401, 421 P.2d 409]. But in *Sheppard* v. *Maxwell* (1966) 384 U.S. 333 [16 L.Ed.2d 600, 86 S.Ct. 1507], the United States Supreme Court recognized the danger to the right of fair trial by unwarranted and prejudicial publicity, and suggested a method whereby the right of fair trial could be preserved without an unconstitutional encroachment upon the equally protected rights of free speech and free press. In *Sheppard* the court said the trial court in that case ". . . might well have proscribed extrajudicial

statements by any lawyer, party, witness, or court official which divulged prejudicial matters, such as the refusal of Sheppard to submit to interrogation or take any lie detector tests; any statement made by Sheppard to officials; the identity of prospective witnesses or their probable testimony; any belief in guilt or innocence; or like statements concerning the merits of the case." (P. 361 [16 L.Ed.2d p. 619].) Again, at page 363 [16 L.Ed.2d at p. 620], the court declared: "The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function." ▮ We construe this language of the court to mean that in proper cases, where the right to a fair trial may be at issue, the court is required to take steps to control the release and dissemination of facts and evidence likely to be presented to the court or the jury in the course of the trial. Thus authority for issuance of the pretrial order in this case seems to us unassailable.

▮ Appellants argue in effect, however, that direct proof must be made that specified information will have a prejudicial effect upon the trial before a valid order may be made limiting distribution of such material. We do not accept this view. Although pretrial orders must be carefully drawn so as not to unduly restrict protected rights, it is virtually impossible for any order to cover every aspect of evidence, fact or information that may arise. Moreover, the trial judge cannot be made the personal censor of every statement contemplated by each participant in the trial. An order specific enough so that all parties know what is proscribed is sufficient.

▮ Appellants next contend that the pretrial order was issued without reference to the clear and present danger test. (See *Schenck* v. *United States*, 249 U.S. 47, 52 [63 L.Ed. 470, 473, 39 S.Ct. 247]; *Thomas* v. *Collins*, 323 U.S. 516 [89 L.Ed. 430, 65 S.Ct. 315]; *Weaver* v. *Jordan*, 64 Cal.2d 235, 243 [49 Cal.Rptr. 537, 411 P.2d 289].) In *Bridges* (p. 263 [86 L.Ed. p. 203]) the court said: "What finally emerges from the 'clear and present danger' cases is a working principle that the substantive evil must be extremely serious and the degree of imminence extremly high before utterances can be punished." Here, the evil the trial court sought to prevent by its order was the denial of a fair trial to all parties by harmful

and prejudicial publicity generated by those involved in the proceedings then before the court. The imminence of the danger which the court sought to foreclose is clear. At the time the court made its order, lawlessness and student strife on the campus of the University of California at Berkeley were matters of common knowledge, of which the trial court could take judicial notice. A large number of newspaper articles and pictures have been made a part of the record in this case, and are lodged with us. These publications reflect the extensive nature of student disorder at the time the court acted and while trial was pending. The sole purpose of the court's order was to assure a fair trial, and in the highly charged atmosphere in which the order was made its formulation and announcement was not merely justified but was required by directions contained in *Sheppard*.

■    Appellants cite and rely upon *Crosswhite* v. *Municipal Court*, 260 Cal.App.2d 428 [67 Cal.Rptr. 216]. That case is not helpful to them. In *Crosswhite*, the contemner ran a newspaper advertisement intended to prejudice potential jurors in favor of the defendant. It was admitted however that neither defense nor prosecution could say whether the advertisement had helped or harmed one or the other. Accordingly the appellate court rightly concluded that the advertisement did not present a ''clear and present danger'' to the administration of justice and set the finding of contempt aside. In our case, however, arrest of the appellants was attended by wide publicity. After arrest and before plea the defendants distributed statements attacking the University, charging their arrest was political and that the trial would be a political trial. In light of prevailing tensions, the probability that the prosecution or defense might issue statements which would interfere with a fair trial was high. The duty of the court to take reasonable measures to assure a fair trial was therefore plain under the requirements stated in *Sheppard*. We think the order of the trial judge, attempting to balance the right of all parties to a fair trial against the equally protected right of free speech, properly issued in this case.

■    Appellants also argue that the broadness of the court's order interfered with their right to reply to the charges against them. We find this argument to be without merit. The order does not prohibit the defendants from describing the charges against them and unequivocally asserting their own innocence. It does prohibit discussion of the merits of the case and the evidence and arguments that might

be presented at trial, and in this respect goes no further than the permissible limits noted in *Sheppard.* Appellants assert however, that language in *Endler* v. *Schutzbank,* 68 Cal.2d 162, 180 [65 Cal.Rptr. 297, 436 P.2d 297], supports their right to reply at length to the charges expressed in the complaint. In *Endler* the court said in part that: ". . . fundamental fairness requires that an individual be permitted to defend himself publicly against official charges, however informal, which threaten to stain his personal and professional future. [Citations.]" That case is readily distinguishable from the one we here consider. In *Endler,* the Corporation Commissioner made charges affecting the reputation of the plaintiff, and thereby precluded his employment in his chosen field of endeavor. The commissioner offered the plaintiff no more than an informal, administrative hearing before his agency, with the prehearing statement that the commissioner would not be bound by the result of the hearing, whether it favored the plaintiff or not. Thus the plaintiff there could never have secured any vindication of the charges made against him. But in our case, appellants asserted their innocence and were to be given a public trial, with every facility made available to them for the production of evidence and witnesses. The very purpose of the court's order was to guarantee a fair trial before an unprejudiced jury, thus assuring to appellants the right to make an effective reply to the charges made in the People's complaint.

Appellants further argue that the pretrial order must fall because it fails to meet constitutional standards which require the order to be formulated with narrow specificity so as to meet the particular evil sought to be regulated. (See *N.A.A.C.P.* v. *Button,* 371 U.S. 415, 433 [9 L.Ed.2d 405, 418, 83 S.Ct. 328]; *Cantwell* v. *Connecticut,* 310 U.S. 296, 311 [84 L.Ed. 1213, 1221, 60 S.Ct. 900, 128 A.L.R. 1352]; *Fort* v. *Civil Service Com., supra,* 61 Cal.2d 331, 337, and cases cited.) We do not think the order made in this case fails to meet the required standard. It must be remembered that the order was announced in the atmosphere of a widely publicized controversy concerning campus lawlessness and disorder, and that great public attention was focused upon the arrest of the defendants and their pending trial. It was a near certainty that tensions would not abate during the interval between arrest and trial. The court's order sought only to have the issues judicially determined in open court, on competent evi-

dence, rather than by the community upon the basis of information supplied by partisans and carried by the news media. The order applied to the parties and their counsel. Such persons were before the court, and subject to its proper orders. Nor can there be any successful attack upon the order because it also applied to law enforcement agencies, the regents of the university and the associated students. Although the university was not a party to the proceedings, it was the party said to have been directly offended by the conduct of the defendants, and agents and officers of the university might well have been witnesses at the trial. The same may be said of the associated students of the university. They were involved in matters touching upon the merits of the issues then before the court and were potential witnesses. *Sheppard* enjoined trial judges to protect the sanctity of trial proceedings by guarding them from the unwarranted statements of ". . . prosecutors, counsel for the defense, the accused, witnesses, court staff [and] enforcement officers coming under the jurisdiction of the court. . . ." The court's order made in this case complies with the mandate of *Sheppard,* and we must uphold it.

The judgment is affirmed.

Brown (H. C.), J., concurred.

DRAPER, P. J.—I dissent.

Defendants' brazenly flagrant flouting of an order obviously made for their own protection can hardly evoke sympathy for them. Nonetheless, I feel that the pretrial order of the municipal court goes beyond permissible limits and thus cannot afford a basis for punishment. (*In re Berry,* 68 Cal.2d 137, 147-149 [65 Cal.Rptr. 273, 436 P.2d 273].)

The seemingly broad admonition of the United States Supreme Court (*Sheppard* v. *Maxwell,* 384 U.S. 333, 363 [16 L.Ed.2d 600, 620, 86 S.Ct. 1507]) is subject to limitations recognized but not emphasized in that opinion.

The "clear and present danger" limitation applies. The *Sheppard* opinion cites with approval a number of decisions emphasizing that rule (e.g., *Craig* v. *Harney,* 331 U.S. 367 [91 L.Ed. 1546, 67 S.Ct. 1249] ; *Pennekamp* v. *Florida,* 328 U.S. 331 [90 L.Ed. 1295, 66 S.Ct. 1029] ; *Bridges* v. *California,* 314 U.S. 252 [86 L.Ed. 192, 62 S.Ct. 190, 159 A.L.R. 1346] ). The essence of that rule is that the "substantive evil must be extremely serious and the degree of imminence extremely high before utterances can be punished" (*Bridges* v. *California,*

*supra,* at p. 263 [86 L.Ed. at p. 203]). Review of the authorities makes clear that the requisite degree of clarity and imminence is rarely found.

The order here was issued on the court's own motion. Thus we have no moving papers, affidavits, or exhibits. The order contains no recital of facts which were before the court, merely stating that "to secure a fair trial in this case it is essential to keep pretrial publicity to an absolute minimum." This statement, of course, would apply to most cases awaiting trial, and does not show any past or threatened events to establish the requisite degree of clarity and imminence of danger in this trial. Appellants' counsel have lodged with us clippings from three newspapers for the period from December 1 to close of trial, but they have two deficiencies for our present inquiry. It is doubtful that this material establishes the requisite clear and present danger. More important, we do not know that they were before the court or motivated its decision to issue the order. Thus I have grave doubts that this first test of the order has been met.

In any event, the order seems to me too broad and uncertain to support penal sanctions. Overbreadth and uncertainty in a penal statute render it void (*Thornhill* v. *Alabama,* 310 U.S. 88 [84 L.Ed. 1093, 60 S.Ct. 736] ; *Fort* v. *Civil Service Com.,* 61 Cal.2d 331 [38 Cal.Rptr. 625, 392 P.2d 385]). When an enactment restricting free speech is attacked upon these grounds, the courts may consider the operation of the enactment as to factual situations and parties other than those presently before the court (*N.A.A.C.P.* v. *Button,* 371 U.S. 415, 432-433 [9 L.Ed.2d 405, 417-418, 83 S.Ct. 328] ; *In re Hoffman,* 67 Cal.2d 845 [64 Cal.Rptr. 97, 434 P.2d 353] ; *Fort* v. *Civil Service Com., supra*). The rule against overbreadth and uncertainty applies to a temporary restraining order (*In re Berry, supra,* 68 Cal.2d 137). It seems clear that a pretrial order of the type before us, restricting release of information pending trial, is subject to like limitations.

This order bars release to news media of "information or opinion concerning the trial or any issue likely to be involved therein." The prohibition was not limited to assertions of views in a context relating them to the issues of the trial, but could be construed to bar even comments which made no reference to the trial, so long as they dealt with any subject "likely to be involved" in it. Similarly, the order could well be read to bar the use of news media by either side in a search for witnesses to the events of the demonstration. I recognize

that the trial judge doubtless intended no such restriction, and that violation in these respects was unlikely to be punished. But the rule on overbreadth nonetheless strikes down the order.

Moreover, the restrictions were specifically extended to the "Regents of the University of California and their agents and employees and to the Associated Students of the Univeristy of California, their members and affiliated organizations." Literally applied, this restricted students and faculty, not parties to the pending action, from discussing among themselves events and issues of great and immediate concern to them, whenever newsmen might be present. The prohibition of release "directly or indirectly" could have this effect even if publicity were neither sought nor anticipated.

However provocative the words of defendants, they can be punished only if the order is valid. Disagreement with the words spoken does not warrant limiting the freedom to speak them. Unpleasant as it is to me to deprive defendants of the limited martyrdom for which they seemed so anxious, I would reverse the judgment and direct the municipal court to sustain the demurrer.

Appellants' petition for a hearing by the Supreme Court was denied May 14, 1969. Peters, J., was of the opinion that the petition should be granted.