CHICAGO COUNCIL OF LAW-
YERS et al., Plaintiffs,

v.

William J. BAUER et al., Defendants,

Terence MacCarthy et al., Intervenors.

No. 70 C 2194.

United States District Court,
N. D. Illinois, E. D.

Feb. 5, 1974.

Alexander Polikoff, Chicago, Ill., for plaintiff.

Terence F. MacCarthy, Director, Federal Defender Program, Inc., Chicago, Ill., for intervenors.

James Thompson, U. S. Atty., Chicago, Ill., for defendant.

George D. Crowley, Louis G. Davidson, Owen Rall, Chicago, Ill., Karl C. Williams, Rockford, Ill., American Bar Association, amicus curiae, for defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' AND INTERVENORS' MOTIONS

The Chicago Council of Lawyers, an association of local lawyers, and seven of its attorney members have filed this action for declaratory judgment and injunction seeking a finding that Rule 1.-07 of the Local Criminal Rules of this court and Disciplinary Rule DR 7–107 of the American Bar Association Code of Professional Responsibility (collectively referred to as the no-comment rules) are facially unconstitutional as violative of the plaintiffs' first amendment rights.[1] The no-comment rules prohibit the release of information by counsel in connection with pending criminal jury cases, "if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice

---

1. The plaintiffs allege that Local Rule 8 and the November, 1965 Policy Statement issued by the judges of this court are intended to incorporate the A.B.A. Disciplinary Rules.

For purposes of this memorandum, the court will assume *arguendo* that this interpretation is correct.

the due administration of justice." Local Rule 1.07(a). A.B.A. Disciplinary Rule DR 7–107(G) extends these principles to civil cases.[2]

The complaint has two counts: Count I is on behalf of plaintiffs individually while Count II is a purported class action brought on behalf of all similarly situated attorneys. Certain criminal defense lawyers were granted leave to intervene and presently have before the court a motion to have themselves declared the proper representatives of the subclass of attorneys defending criminal cases. Both the intervenors and the defendants have moved to dismiss for failure to state a claim upon which relief can be granted.[3] For the reasons herein stated, the court grants the motions of intervenors and defendants to dismiss. In light of this disposition, the procedural questions raised by the intervenors need not be reached.

█ A fundamental tenet of our system of justice is "that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence . . ." Patterson v. Colorado, 205 U. S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879 (1907). The right to a fair and impartial adjudication extends not only to criminal defendants but also to the government and, through it, to society. Cf. Williams v. Florida, 399 U.S. 78, 82, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); North Carolina v. Pearce, 395 U.S. 711, 721 n. 18, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); United States v. Tijerina, 412 F.2d 661, 666 (10th Cir.), cert. den., 396 U.S. 990, 90 S.Ct. 478, 24 L.Ed.2d 452 (1969); State v. Kavanaugh, 52 N.J. 7, 243 A.2d 225, 231 (1968). Yet, in recent years, it has become increasingly evident that this fundamental right has been seriously threatened by excessive and prejudicial publicity.

Against this background, the Supreme Court in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1961), directed district courts to seek an accommodation between the competing constitutional guarantees of fair trial and free speech. In clear and unequivocal language, the Court declared:

"The courts *must* take such steps by *rule and regulation* that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function. Collaboration between counsel and the press as to information affecting the fairness of a criminal trial is not only *subject to regulation, but is highly censurable and worthy of disciplinary measures.*" (Emphasis added.) 384 U.S. 363, 86 S.Ct. 1522.

With respect to extrajudicial disclosures by counsel, the Court was quite explicit:

"More specifically, *the trial court might well have proscribed extrajudicial statements by any lawyer,* party, witness, or court official *which divulged prejudicial matters,* such as the refusal of Sheppard to submit to interrogation or take any lie detector tests; any statement made by Sheppard to officials; the identity of prospective witnesses or their probable testimony; any belief in guilt or innocence; or like statements concerning the merits of the case." (Emphasis added.) 384 U.S. 361, 86 S.Ct. 1521.

The efforts of the courts and the bar to implement these mandated directives

---

2. The "reasonable likelihood" standard, adopted in Section (a) of Local Rule 1.07, clearly applies to all succeeding paragraphs. Section (a) was expressly intended to state the broad principle underlying the specific restrictions contained in Sections (b) through (e). Likewise, the standard was clearly the underlying theory upon which the A.B.A. Disciplinary Rules were promulgated.

Advisory Committee on Fair Trial and Free Press, ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Fair Trial and Free Press, 84–85, Tentative Draft (1966).

3. The American Bar Association, as amicus curiae, has submitted a brief in support of the motions to dismiss.

culminated in the adoption of the currently challenged rules.[4]

## I. *Criminal Jury Trials*

The plaintiffs contend that there are four respects in which the no-comment rules, as applied to criminal jury trials, exceed the minimum restraint required to assure a fair and impartial jury trial and are thus facially unconstitutional.

■ Plaintiffs first argue that the failure of the rules to provide for the employment of traditional protective devices, in lieu of partially silencing attorneys, renders them unconstitutional.[5] Initially, it must be remembered that such devices, unlike the challenged rules, are not preventive measures, but merely attempts to overcome the effects of prejudicial publicity once it has occurred. As the court in *Sheppard* was careful to point out, "the cure lies in those remedial measures that will *prevent* the prejudice at its inception." (Emphasis added.) 384 U.S. 333, 363, 86 S.Ct. 1522.

Measured against the no-comment rules, these traditional techniques are clearly inadequate. Continuances, of course, are in conflict with the Sixth Amendment guarantee of a speedy trial. Changes of venue compel defendants to sacrifice their constitutional right to trial in the locale in which the crime took place. Further, neither these devices nor cautionary instructions can negate the effect of prejudicial publicity once it has permeated the proceedings. Sequestration of the jury is equally inadequate. If it is ordered because of the jurors' exposure to prejudicial publicity before trial, irremediable damage may have already been done. Sequestration is generally viewed as an undesirable last resort by defense counsel (Intervenors' Br. 24) and may itself prejudice the defendant because of the inconvenience and annoyance it causes jurors. It should not be invoked merely to permit attorneys to disseminate prejudicial publicity. *See* Reardon Report, 73–76.

■ Plaintiffs next contend that the rules are unconstitutionally overbroad because they fail to draw any distinction between comments favorable to the criminal defendant and those which are hostile. Admittedly, the publicity problem in the main has been one of prosecutorial excesses. Reardon Report, 37, 42–43. However, this does not permit the court to assume that defense counsel's comments would be non-prejudicial to the prosecution even though merely favorable to the defendant. Indeed, the re-

4. The *Sheppard* decision generated a series of major studies designed to develop a practical solution to the fair trial-free speech dilemma. Among the most significant were: (1) Advisory Committee on Fair Trial and Free Press, ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Fair Trial and Free Press—Tentative Draft (1966), Approved Draft (1968) [hereinafter cited as the Reardon Report]; (2) Committee on the Operation of the Jury System, Judicial Conference of the United States, Report of the Committee on the Operation of the Jury System on the "Free Press-Fair Trial" Issue (Sept., 1968), reported in 45 F.R.D. 391 [hereinafter cited as the Kaufman Report]; (3) Association of the Bar of the City of New York, Special Committee on Radio, Television, and the Administration of Justice, Freedom of the Press and Fair Trial, Final Report with Recommendations (1967) [hereinafter cited as the Medina Report].

This court has found the recommendations of the Kaufman Report to be particularly persuasive. The report was prepared by a committee of 12 federal court judges, chaired by Judge Edward T. Gignoux of Maine, and was ultimately adopted by the Judicial Conference of the United States. In it, the committee specifically recommended the implementation of local court rules designed to control the release of prejudicial information by attorneys on penalty of disciplinary action. 45 F.R.D. 401. In substantial portion, Local Rule 1.07 was drawn verbatim from the suggested rules prepared by the committee. It is especially significant that, after circulating the report to all federal judges, the committee reported that, "[t]he individual and collective opinions of federal judges . . . overwhelming reflected general satisfaction with all recommendations of the report". 45 F.R.D. 400.

5. Traditional protective devices include continuances, changes of venue, cautionary instructions and sequestration.

port of a New York City Bar Association committee, chaired by Judge Harold R. Medina, indicated that it is not uncommon for defense counsel to actively generate publicity which may taint the impartiality of a tribunal. *See* Medina Report, 43–55; Reardon Report, 42–43, 175; United States ex. rel. Bloeth v. Denno, 313 F.2d 364, 378–379 (2nd Cir.) (dissent), cert. den., 372 U.S. 978, 83 S. Ct. 1112, 10 L.Ed.2d 143 (1963); Sheppard v. Maxwell, *supra*, 384 U.S. 361, 86 S.Ct. 1507. The adoption of the onesided approach urged by the plaintiffs would ignore the correlative interest of society in a fair trial. Any limitation of prejudicial comment should apply to any attorney bent on securing improper advantage. State v. Van Duyne, 43 N.J. 369, 204 A.2d 841, cert. den., 380 U.S. 987, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1969); State v. Kavanaugh, *supra*.

Plaintiffs' third objection is that the rules constitute a "prior restraint" of first amendment rights and must be judged accordingly. *See* Organization for a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). However, unlike the cited cases, the instant situation does not impose a blanket prohibition on all speech irrespective of content. Rather, the challenged rules seek only to punish speech from which prejudice is reasonably likely to result. They impose a responsibility on those who violate them as do the laws on slander, libel and obscenity. The rules are therefore clearly not a prior restraint.

Finally plaintiffs attack the rules on the ground that they are not predicated upon a "clear and present danger" of prejudicial effect, but rather employ the lesser standard of "reasonable likelihood." In support of this proposition, they cite Bridges v. California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941), Pennekamp v. Florida, 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946), Craig v. Harney, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947), and Wood v.

Georgia, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962). It is the opinion of this court that neither the Constitution nor the cited case law supports plaintiffs' conclusion.

*Bridges* and its progeny are more accurately cited for the proposition that, where no "judicial proceeding [is] pending," the First Amendment rights of the press and private citizens cannot be proscribed by court order without a serious and imminent threat to the administration of justice. Bridges v. California, *supra*, 314 U.S. at 263, 62 S.Ct. 190. This court, however, cannot accept the notion that these principles must be extended to lawyers participating in ongoing litigation.

Additionally, this court takes cognizance of significant factual differences which distinguish the *Bridges-Wood* line of decisions from the situation now before the court. Each of the cases cited by the plaintiffs was concerned with defining the permissible scope of the contempt power, "a common law concept of the most general and undefined nature." Bridges v. California, *supra*, 314 U.S. at 260, 62 S.Ct. at 192. None dealt with the violation of a narrowly drawn statute or court rule which seeks to accommodate competing constitutional interests.

The Supreme Court has made it abundantly clear that review of contempt convictions will differ drastically from review of statutory violations, where the need for regulation has been buttressed by prior legislative deliberations. Bridges v. California, *supra*, 314 U.S. at 260–261, 62 S.Ct. 190; Wood v. Georgia, *supra*, 370 U.S. at 386, 82 S.Ct. 1364. In the later situation, great deference is accorded to the judgment of the legislature. *See, e. g.,* Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L. Ed. 1137 (1951); Barenblatt v. United States, 360 U.S. 109, 79 S.Ct. 1081, 3 L. Ed.2d 1115 (1959). In view of the extensive deliberations which preceded the promulgation of the challenged rules, see footnote 4, *supra*, it is evident that they must be judged by standards analogous

to those applied to legislative action. Thus, having reached the court "encased in the armour wrought by prior legislative deliberation," Bridges v. California, *supra* 314 U.S. at 261, 62 S.Ct. at 193, these rules should not be overturned lightly.

Perhaps the most effective distinction may be drawn from the language of *Wood* itself. There, as in *Bridges, Pennekamp,* and *Craig,* the Court was dealing with hostile remarks directed at judges or the general administration of justice. This must be distinguished from the situation where the communication might prejudice a pending trial. The court noted at 370 U.S. pp. 389–390, 82 S.Ct. p. 1372:

"[I]t is important to emphasize that this case does not represent a situation where an individual is on trial; there was no 'judicial proceeding pending' in the sense that prejudice might result to one litigant or the other by ill-considered misconduct aimed at influencing the outcome of a trial or a grand jury proceeding. . . . Moreover, we need not pause here to consider the variant factors that would be present in a case involving a petit jury. *Neither Bridges, Pennekamp nor Harney involved a trial by jury.* In Bridges it was noted that 'trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper' (314 U.S., at 271 [62 S.Ct. at 197]), *and of course the limitations on free speech assume a different proportion when expression is directed toward a trial as compared to a grand jury investigation."* (Emphasis added.)

In In Re Sawyer, 360 U.S. 622, 79 S. Ct. 1376, 3 L.Ed.2d 1473 (1959), the Supreme Court was confronted with a problem similar to the one present here. During the pendency of a criminal case, one of the trial counsel made a public speech construed by the Supreme Court of Hawaii as an attack on the fairness and impartiality of the federal district court judge presiding over the trial. As a result, the Hawaii Supreme Court found Mrs. Sawyer guilty of gross misconduct and suspended her from practice for one year. In a five to four decision, the United States Supreme Court reversed Mrs. Sawyer's suspension, on the ground that the findings upon which the suspension rested were not supported by the evidence. The dissent emphasized the proposition that the First Amendment rights to active trial counsel were significantly less immune from restriction than those of other private citizens or the media.

In the course of his opinion for the dissenters, Justice Frankfurter stated at 668, 79 S.Ct. at 1399:

"Here was a public meeting addressed by counsel for the defense, haranguing a crowd on the unfairness to the defendant of the proceedings in court, with the high probability indeed almost certainty under modern conditions that the goings-on of the meeting would come to the attention of the presiding judge and the jury. It took place in a case in which public interest and public tempers had been aroused. When the story of the meeting came to the attention of the judge, he felt obliged publicly to defend his conduct. *It is hard to believe that this Court should hold that a member of the legal profession is constitutionally entitled to remove his case from the court in which he is an officer to the public and press, and express to them his grievances against the conduct of the trial and the judge.* 'Legal trials,' said this Court, 'are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper.' [citing *Bridges, supra,* 314 U.S. at p. 271, 62 S.Ct. at p. 197]

*"Even in the absence of the substantial likelihood that what was said at a public gathering would reach the judge or jury, conduct of the kind found here cannot be deemed to be protected by the Constitution.* An attorney actively engaged in the conduct of a trial is not merely another citizen. He is an intimate and trusted and es-

sential part of the machinery of justice, an 'officer of the court' in the most compelling sense. He does not lack for a forum in which to make his charges of unfairness or failure to adhere to principles of law; he has ample chance to make such claims to the courts in which he litigates. As long as any tribunal bred in the fundamentals of our legal tradition, ultimately this Court, still exercises judicial power those claims will be heard and heeded." (Emphasis added.)

Justice Stewart concurred in the reversal but solely on the basis that the evidence was insufficient. His carefully limited concurrence demonstrates that he agreed with the constitutional principles articulated by Justice Frankfurter:

"If, as suggested by my Brother Frankfurter, there runs through the principal opinion an intimation that a lawyer can invoke the constitutional right of free speech to immunize himself from even-handed discipline for proven unethical conduct, it is an intimation in which I do not join. A lawyer belongs to a profession with inherited standards of propriety and honor, which experience has shown necessary in a calling dedicated to the accomplishment of justice. He who would follow that calling must conform to those standards.

"*Obedience to ethical precepts may require abstention from what in other circumstances might be constitutionally protected speech.* (Emphasis added.) 360 U.S. 646, 79 S.Ct. 1388.

■ When considered together, the views expressed in the dissent and Justice Stewart's concurring opinion at least stand for the proposition that the First Amendment does not immunize trial counsel from discipline for public statements which might affect the fairness of a pending case, see Sheppard v. Maxwell, *supra* 384 U.S. at 363, 86 S.Ct.

1507, and raises substantial doubt as to the viability of the "clear and present danger" test as a measure of protected speech in that context. Neither the "clear and present danger" test nor the rulings in *Bridges, Pennekamp,* or *Craig* were intimated as controlling.[6]

Some of these very issues were recently considered in United States v. Tijerina, *supra.* There, the court reviewed a criminal contempt conviction arising from public statements made by defendants in violation of a pre-trial order prohibiting comments by all attorneys and defendants. The defendants asserted that the order was invalid since it was not based upon a clear and present danger to the administration of justice. The Tenth Circuit rejected defendants' argument, stating at 412 F.2d p. 666:

"We believe that reasonable likelihood suffices. The Supreme Court has never said that a clear and present danger to the right of a fair trial must exist before a trial court can forbid extrajudicial statements about the trial."

*Accord,* In Re Sawyer, 260 F.2d 189 (9th Cir. 1958), rev'd on other grounds, 360 U.S. 622, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959); State v. Van Duyne, *supra;* Hamilton v. Municipal Court, 270 Cal.App.2d 797, 76 Cal.Rptr. 168 (1st Dist.), cert. den., 396 U.S. 985, 90 S.Ct. 479, 24 L.Ed.2d 449 (1969); Kaufman Report, 404–7; Reardon Report, 93.

■ Accordingly, it is the judgment of this court that a "clear and present danger" to the fair administration of justice is not the required standard to be used in measuring the constitutionality of court rules proscribing the dissemination of prejudicial remarks by active trial counsel.

In the final analysis, the right of trial counsel to comment on pending criminal proceedings must be weighed against the right of individual defendants and socie-

6. Of particular note is Justice Frankfurter's statement that even in the absence of a "substantial likelihood" of court exposure to the declarations, Mrs. Sawyer's conduct re-

mained constitutionally unprotected. *See* Strong, Fifty Years of "Clear and Present Danger"; From Schenck to Brandenberg—and Beyond, 1969 S.Ct.Rev. 41.

ty to a fair and impartial trial. As the Supreme Court has repeatedly indicated, "the societal value of speech must, on occasion, be subordinated to other values and considerations." Dennis v. United States, *supra,* 341 U.S. 503, 71 S.Ct. 864. In such cases, the court must weigh the individual and societal interest in freedom of expression against the societal interest in the result which the regulation may achieve. *See, e. g.,* Breard v. Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); Dennis v. United States, *supra;* Rowan v. Post Office, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970).

Upon examination of the interests asserted by plaintiffs, this court finds them to be neither compelling nor evident. Initially, it is important to observe that the challenged rules do not establish a blanket prohibition on all speech. Attorneys may quote from or refer to the public record, request assistance in obtaining evidence, release the facts surrounding the time and place of the arrest, as well as announce that the accused denies the charges made against him. A.B.A. Disciplinary Rule DR 7–107(B). Furthermore, it is apparent from even the briefest survey of the situation that the public's right to know is not substantially impaired. *See* Red Lion Broadcasting Co. v. F. C. C., 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). The media, as well as private citizens, remain unrestrained in their ability to comment on pending proceedings. Only the voices of participating attorneys are stilled, and then only if the statements present a reasonable likelihood of prejudicing the judicial process.

Nor can it be contended that participating attorneys have a proper interest in publicly discussing matters not of record that could affect the outcome of the litigation. Any such statements invite the fact finder to weigh these considerations in addition to or in disregard of the evidence presented at trial. A

courtroom "is a place for trial of defined issues in accordance with law and rules of evidence, with standards of demeanor for court, jurors, parties, witnesses and counsel." In Re Dellinger, 461 F.2d 389, 401 (7th Cir. 1972). The injection of prejudicial remarks would remove justice from its proper forum, to the advantage of those skilled in manipulating the media and the public.

Moreover, in the process of accommodating the fair trial guarantee with other constitutional rights, the Supreme Court has indicated that the former must prevail:

"We have always held that the atmosphere essential to the preservation of a fair trial—the most fundamental of all freedoms—must be maintained at all costs. Our approach has been through rules, contempt proceedings and reversal of convictions obtained under unfair conditions. Here the remedy is clear and certain of application and it is our duty to continue to enforce the principles that from time immemorial have proven efficacious and necessary to a fair trial." Estes v. Texas, 381 U.S. 532, 540–541, 85 S.Ct. 1628, 1632, 14 L.Ed.2d 543 (1965). *See* United States v. Tijerina, *supra.*

Finally, in light of Sheppard v. Maxwell, *supra,* the "reasonable likelihood" standard is mandatory. There, the Supreme Court established the principle that a criminal defendant need only show a probability of prejudicial circumstances to obtain reversal of his conviction. If convictions are to be overturned on a showing that publicity *probably affected* the outcome, attempts by court rule to forestall such prejudice must be judged by the same standard. To adopt a more lenient guideline would allow unprincipled attorneys to frustrate the judicial process with impunity and thus ignore the command of the Supreme Court in *Sheppard* to deal with the problem by "rule and regulation."[7]

---

7. Plaintiffs' reliance on Chase v. Robson, 435 F.2d 1059 (7th Cir. 1970) and In Re

Oliver, 452 F.2d 111 (7th Cir. 1971) is misplaced. In *Chase,* the Seventh Circuit spe-

*See* United States v. Tijerina, *supra;* State v. Van Duyne, *supra;* Hamilton v. Municipal Court, *supra.*

## II. *Civil Jury Trials*

■ Plaintiffs argue that A.B.A. Disciplinary Rule DR 7–107(G) is unconstitutionally overbroad because it extends the restraints of the no-comment rules to civil jury cases. Plaintiffs base their contention upon the following reasoning: major social and political issues are likely to find their way into the federal courts; intelligent discourse on these issues is vital to society's interests; attorneys involved in such litigation can make significant contributions to these discussions; thus participating counsel should be unfettered in their discussion of pending civil cases.

Yet, the need for rational resolution of disputes in accordance with the law and rules of evidence is no less compelling in civil litigation than in criminal trials. "The very purpose of a court system is to adjudicate controversies, *both criminal and civil,* in the calmness and solemnity of the courtroom according to legal procedures." (Emphasis added.) Cox v. Louisiana, 379 U.S. 559, 583–584, 85 S.Ct. 466, 471, 13 L.Ed.2d 487 (1965) (Black, J., dissenting). Many of the reasons which establish the constitutionality of the no-comment rules as applied to criminal jury trials also support the conclusion that A.B.A.

Disciplinary Rule DR 7–107(G) is not overbroad. See Section I, *supra.*[8]

## III. *Civil and Criminal Bench Trials*

■ Finally, plaintiffs argue that the no-comment rules are overbroad because they fail to distinguish between jury and bench trials. Although the need for these restrictions may be more acute in the jury context, and although the challenged rules emanated from abuses arising therein, this does not mean that the possibility for prejudice is non-existent at bench trials. Speaking in an analogous context, the Supreme Court has recognized:

"that most judges will be influenced only by what they see and hear in court. However, judges are human; and the legislature has the right to recognize the danger that some judges . . . and other court officials, will be consciously or unconsciously influenced by demonstrations in or near their courtrooms both prior to and at the time of trial." Cox v. Louisiana, *supra* at 565, 85 S.Ct. at 481.[9]

## IV. *Orders of the Court*

It is therefore ordered that:

1. In view of the following disposition, the Intervenors' motion to have themselves declared the proper representatives of attorneys who regularly represent defendants in criminal cases

cifically declined to rule on the issue. Similarly, in *Oliver,* the court's decision was premised upon the unconstitutionality of this District's policy statement of November, 1965. No opinion was expressed as to the propriety of the "reasonable likelihood" standard.

8. No weight should be attributed to the failure of the various study committees, *see* note 4 *supra,* to make recommendations concerning civil cases, as such matters were beyond the scope of the committee undertakings.

9. Justice Frankfurter had earlier noted that out-of-court comment might affect judicial perceptions:

"A powerful newspaper admonished a judge, who within a year would have to

secure popular approval if he desired continuance in office, that failure to comply with its demands would be 'a serious mistake'. . . . If such a sentence had been imposed readers might assume that the court had been influenced in its action; if lesser punishment had been imposed, at least a portion of the community might be stirred to resentment. It cannot be denied that even a judge may be affected by such a quandary." Bridges v. California, *supra* 314 U.S. at 299–300, 62 S. Ct. at 211.

While the tenure of federal judges protects them from electoral ramifications of their decisions, the manner in which a judge views a case may be affected by statements sought to be proscribed.

in this district shall be, and the same is hereby, denied.

2. The Defendants' and Intervenors' motions to dismiss shall be, and the same are hereby, granted.

(s) EDWIN A. ROBSON

(s) RICHARD B. AUSTIN

(s) JAMES B. PARSONS

(s) HUBERT L. WILL

(s) BERNARD M. DECKER

EXECUTIVE COMMITTEE