Curtis C. WILSON, Plaintiff,

v.

UNITED STATES CIVIL SERVICE COM-
MISSION, Philip Young, George M.
Moore, Frederick J. Laughton, Defend-
ants.

No. 2814-55.

United States District Court
District of Columbia.
Dec. 1, 1955.

Edward de Grazia, Washington, D. C.,
Irving Ferman, Herbert J. Miller, Jr.,
Washington, D. C., of counsel, for plain-
tiff.

William F. Becker, Asst. U. S. Atty.,
Washington, D. C., for defendants.

YOUNGDAHL, District Judge.

This cause came on to be heard on de-
fendants' motion to dismiss or, in the al-
ternative, for summary judgment and on
plaintiff's motion for summary judg-
ment.

Plaintiff is a resident of Houston,
Texas, and an employee of the Railway
Mail Service of the United States Post
Office Department. He wrote a letter to
the *Houston Post* which was published in
its column entitled "Sound-Off" on June
22, 1954. The letter reads:

"In olden times there was a goat
called the 'Judas' goat. He led the
other goats to the slaughtering pen.
They followed him blindly because
they had confidence in him.

"After the Judas goat had deliv-
ered this batch of goats to the execu-
tioners, he went back after another
batch.

"This just might be a parable.
Our esteemed, honorable governor
was elected by the Democrats, then
in 1952 turned against the Demo-
cratic party that had elected him
governor and led Texas into the Re-
publican fold. Of course, our honor-
able governor didn't expect to be ap-
pointed by Ike to a better job, not
much he didn't.

"Anyway, he didn't get the job
and now is offering his services
again to the Democratic party of
Texas. I respect Republicans as
such. I respect Democrats as such.
No one respects a renegade. Let's
send Allan Shivers home."

The United States Civil Service Com-
mission instituted removal proceedings

against plaintiff on September 1, 1954, under Section 9(a) of the Hatch Act,[1] charging that he had participated in a political campaign in that the letter advocated and recommended the defeat of Allan Shivers, "a partisan candidate for nomination for governor of the state of Texas in the Democratic primary of July 24, 1954"; that it was written with the intent to have it published and with the intent to dissuade voters from voting for a specified partisan political candidate at a time when other candidates were conducting campaigns to secure the party nomination.

Plaintiff was granted a hearing to answer these charges. It was held on February 21, 1955, over the protest of his counsel who charged that the hearing was not as prescribed by the Administrative Procedure Act. Then, on May 18, 1955, a final order issued from the Civil Service Commission finding plaintiff in violation of Section 9(a) of the Hatch Political Activity Act and directing that plaintiff be suspended from his employment for a period of ninety days.

On June 27, 1955, plaintiff filed complaint against defendants, seeking declaratory and injunctive relief from the order of suspension. Plaintiff moved for a preliminary injunction on August 15, 1955, which was granted pending final determination of plaintiff's action.

On August 29, 1955, defendants moved to dismiss for lack of jurisdiction or for summary judgment.

■ The Court is satisfied that it has jurisdiction to render declaratory relief. The administrative process has been exhausted. A final order has issued finding plaintiff in violation of Section 9(a) and ordering his suspension from employment for ninety days. No other effective remedy is available to plaintiff. See United Public Workers v. Mitchell, 1947, 330 U.S. 75, 91–94, 67 S.Ct. 556, 91 L.Ed. 754. This is not a case where plaintiff has tried to sue the Civil Service Commission *eo nomine*. The Commissioners themselves are being sued individually and as members of defendant Civil Service Commission and each has been duly served. Compare Blackmar v. Guerre, 1952, 342 U.S. 512, 515, 72 S.Ct. 410, 96 L.Ed. 534.

Attention must be focused upon that portion of Section 9(a) of the Hatch Act which reads:

"No officer or employee in the executive branch of the Federal Government, or any agency or department thereof, shall take any active part in political management or in political campaigns. All such persons shall retain the right to vote as they may choose and to express their opinions on all political subjects and candidates."

A ninety day minimal penalty of suspension without pay is provided for violation of this section. The statute does not specifically authorize or deny the opportunity for a full hearing prior to the enforcement of the penalty provisions. Due to our resolution of the case, questions as to the validity of the controverted hearing are rendered moot.

Section 9(a)[2] specifies that no federal employee shall take any *active* part in political management or in political campaigns. Nothing appears which would indicate that Congress intended more than that government employees desist

---

1. "§ 118i. Executive employees; use of official authority; political activity; penalties; reports to Congress.

   "(a) It shall be unlawful for any person employed in the executive branch of the Federal Government, or any agency or department thereof, to use his official authority or influence for the purpose of interfering with an election or affecting the result thereof. No officer or employee in the executive branch of the Federal Government, or any agency or department thereof, shall take any active part in political management or in political campaigns. All such persons shall retain the right to vote as they may choose and to express their opinions on all political subjects and candidates."

2. It was under this Section that the Commission made its ruling. As a result we are not here concerned with the validity or application of Section 15, 5 U.S.C.A. § 118l.

from actively participating in organized political affairs. In fact, the contrary appears. Senator Hatch himself indicated that an employee was not to be restrained ás to private expression of his political opinion, and subsequently the word "privately" was stricken from the Act as being too restrictive. See 84 Cong.Rec. 10746–10747, 86 Cong.Rec. 2870–1. In each case, therefore, the critical distinction which must be drawn is whether an employee has expressed and communicated independent, personal opinions on political issues, or whether such employee, with deliberation and as part of concerted political action, has sought the election or defeat of political candidates.

The evidence does not establish that plaintiff acted in concert with any political party or movement; that he campaigned for any political party; or that his action was part of organized activity for or against a political party. In the letter plaintiff stated, "I respect Republicans as such. I respect Democrats as such." While he did conclude with, "No one respects a renegade. Let's send Allan Shivers home," the opinion expressed in the letter does not on its face manifest an intent to actively campaign as might, for example, the act of distributing political material or that of collecting political contributions. The letter itself does not fairly indicate active participation in organized political affairs, although, as with most expressions of opinion, an intent to influence the thoughts or actions of others can be assumed. To hold differently would raise grave constitutional questions under the First Amendment. But we do not so read the Hatch Act, for Section 9(a) declares that federal employees retain their rights to "express their opinions on all political subjects and candidates." The Act does not contain a proviso curtailing such expression at those times when it might chance to parallel the positions of the organized parties so long as it is not part of organized political activity.

Statutes regulating expression of opinion require delicate application and sensitive discrimination. This imposes a telling responsibility upon the agency administering the statute. Evidently the Commission has sought to carry out its responsibility by examining and classifying the political statements of federal employees, some of which are considered to demand, apart from the expressed opinion itself, preponderant evidence which establishes contribution to an organized campaign. In others, the expressed opinion is considered to lend itself to no other reasonable interpretation. Here the Commission determined that plaintiff's letter would constitute a violation if, by itself, it could reasonably be construed to contribute to an organized campaign. In so doing, the Commission rejected an interpretation of Section 9(a) it felt would make it "illegal to enlist in an organized political army, but that political guerilla warfare or 'bushwacking' is permissible." We do not say that bushwacking is permissible, for it might well be part of an organized political campaign and related to "a connected series of operations to bring about some desired result", as Webster defines the word "campaign". We merely say that where, as here, there is an isolated, unsolicited, unpaid for, expression of opinion which might never have been published, and nothing more appears, a premeditated effort to engage in, or active participation in, a political campaign is not established. We reject the Commission interpretation based as it was upon the notion that "the intent is patent; proof lies within the 'four corners' of the letter itself."

In view of the constitutional protection to free expression, of the specific wording of the statute, and of the letter itself, the Commission should have taken external evidence as to whether the plaintiff, by writing this letter, was in fact engaging in, or intending to engage in, political activity. An isolated letter which might appear as a contribution to an organized campaign cannot fairly be considered active participation in a political campaign.

Federal employees will continue to run a risk when they express political views, even though the Hatch Act provides that they may express their opinions on all political subjects and candidates. This risk would be lessened were the Commission to resolve close questions—those in which genuine doubt exists as to the act of expression, the substance of the expression, or both—by taking evidence to indicate whether the statement of opinion does in fact represent active participation in a political campaign, and was so intended. Isolated or inferred contribution is not enough.

Summary judgment will be granted for plaintiff.