Billy Don MONTGOMERY

v.

Rex N. WHITE et al.

Civ. A. No. 4933.

United States District Court,
E. D. Texas,
Tyler Division.

Oct. 24, 1969.

Larry Watts, Houston, Tex., Kelly Newman, Kilgore, Tex., for plaintiff.

Gordon Wellborn, Henderson, Tex., for defendants.

## ORDER

JUSTICE, District Judge.

This day came on to be considered plaintiff's motion for directed verdict pursuant to Rule 50(a), F.R.Civ.P.; and it appearing to the court that there is no genuine issue of fact as to the liability of these defendants, the court has decided, as a matter of law, that defendants have unreasonably, arbitrarily and discriminatorily violated plaintiff's rights in not fairly considering him for public employment.

The First Amendment to the Constitution of the United States provides that Congress shall make no law abridging the freedom of speech or the right of the people to peaceably assemble and to petition the government for a redress of grievances. The Supreme Court of the United States has interpreted this prohibition to apply, by way of the due process clause of the Fourteenth Amendment, to any state or political subdivision thereof. This, however, does not mean that all speech is to be permitted.

■■ There can be no doubt that the school board, as an agent of the state, may have a legitimate interest in protecting its educational and administrative activities from undue political activity, Keyishian v. Board of Regents of the University of the State of New York, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed. 2d 629 (1967), that is, activity which may materially and substantially interfere with the requirements of appropriate discipline in the operation of the school. Burnside v. Byars, 363 F.2d 744 (5th Cir. 1966). In this context, the state has interests as an employer in regulating the speech of its employees that differs significantly from those it may possess in connection with regulation of the speech of the citizenry in general. The problem is to arrive at a balance between the interests of the teacher, as a citizen, in participating in matters of a political nature, and the interests of the state as an employer, in promoting the efficiency of the public services it performs through its employees. Pickering v. Board of Education of Township High School District 205, Will County, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

■ It is clearly recognized that the state, acting through its school boards, has the right to investigate the competency and fitness of those whom it hires to teach in its schools. This is not limited to any requirement in the Federal Constitution that a teacher's classroom conduct is to be the sole basis for determining such fitness. Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

■ But simply because teachers are on the public payroll does not make them second-class citizens in regard to their constitutional rights. Even though the governmental purposes are legitimate and substantial, such purposes cannot be pursued by means that broadly stifle fundamental personal liberties when the ends sought can be more narrowly achieved. Laws and official regulations which restrict the liberties guaranteed by the First Amendment should be narrowly drawn to meet the specific evil aimed at. Shelton v. Tucker, supra, at 488. A regulation such as that enacted and enforced by the defendants here, which prohibits all political activity except voting and which, thereby, muzzles some of the most influential citizens of smaller communities, threatens popular government not only because it injures the individuals muzzled, but also because of its harmful effect on the community in depriving it of the political participation and interest of these individuals. United Public Workers of America v. Mitchell, 330 U.S. 75 at 110, 67 S.Ct. 556, 91 L.Ed. 754 (1947). The complete ban on the right of teachers to express political opinions and engage in political activity is inconsistent with the First Amendment guarantee of freedom of speech, press, assembly and petition.

Moreover, the execution of any such policy through a denial for re-employment would have both a specific and a general impact. As to the individual concerned, it acts to cut him off from work and income. But to others the consequence might well be more serious. It would be the warning that others would suffer the same fate, so that eventually all that would remain would be workers not feeling free to speak; they would be silent workers. Pred v. Board of Public Instruction of Dade County, Florida, 415 F.2d 851 (5th Cir. 1969).

This very point is clearly made in Art. 2922–21a, Vernon's Texas Civil Statutes, which provides that

> No school district, Board of Education, superintendent, assistant superintendent, principal, or other administrator shall directly or indirectly coerce any teacher to refrain from participating in political affairs in his community, state or nation.

■ When the defendants were made aware of this statute, they amended their policy to exclude teachers from the ban on political activities. In April, 1968, however, when the plaintiff was refused a contract, this policy was in full effect. The uncontroverted testimony of the defendant, Rex N. White, amply shows that the plaintiff was not employed by the Tatum Independent School District for the 1968–69 school year due, in part at least, to his political activities. Whether plaintiff Billy Don Montgomery resigned in the face of such policy or was refused a contract for the following year can be a distinction of little consequence. There is as much infringement of the plaintiff's constitutionally guaranteed rights when future employment is conditioned on the surrender of those rights as when such employment is refused because of his past exercise of such rights.

The right sought to be vindicated is not a contractual one, nor could it be since no right to re-employment existed. What is at stake is the vindication of constitutional rights—the right not to be punished by the State or to suffer retaliation at its hand because a teacher persists in the exercise of his First Amendment rights. Pred v. Board of Instruction of Dade County, Florida, supra, 415 F.2d at 856.

■ To establish a claim for damages for deprivation of constitutionally secured rights, plaintiff must prove that the conduct complained of was engaged in under color of state law and that such conduct subjected the plaintiff to a deprivation of rights, privileges, or immunities secured by the Constitution of the United States.

For an action to be considered as taken "under color of state law" required a misuse of power possessed by virtue of state law and made possible only because the defendant is clothed with the authority of state law. In this context, all defendants were clearly acting under color of state law when they promulgated and enforced the policy prohibiting political activity. It is equally apparent that plaintiff and others similarly situated were thereby deprived of their First Amendment rights of free speech. Accordingly, it is

Ordered that plaintiff's motion for directed verdict be, and it is hereby, granted.