Steve **J. MORTILLARO**

v.

The **STATE OF LOUISIANA, Through the Honorable Edwin EDWARDS, Governor, and the New Orleans City Civil Service Commission.**

Civ. A. No. 72–1868.

United States District Court, E. D. Louisiana.

Aug. 10, 1972.

Irwin R. Sanders, New Orleans, La., for plaintiff.

William J. Guste, Jr., Atty. Gen. of La., Baton Rouge, La., Marcel Armagnac, Asst. Atty. Gen. of La., Blake G. Arata, City Atty., Michael Starks, Asst. City Atty., Ralph D. Dwyer, Atty. for New Orleans Civil Service Commission and its Members, New Orleans, La., for defendants.

Moise W. Dennery, Atty. for La. State Dept. of Civil Service, New Orleans, La., amicus curiae.

Before WISDOM, Circuit Judge, and BOYLE and WEST, District Judges.

BOYLE, District Judge:

## I. THE CASE

This action was originally instituted by the plaintiff, Steve Mortillaro, a classified employee within the Civil Service of the City of New Orleans, individually and as "a representative of all persons similarly situated." Subsequently, twelve other persons, also alleging to be

classified employees in the Civil Service of the City of New Orleans, intervened as plaintiffs.[1]

Hearing on all issues presented in this litigation[2] was held on July 26, 1972 by the statutory Court which took the matter under submission. Jurisdiction is asserted under 28 U.S.C. §§ 1343, 2201 based upon causes of action under 42 U.S.C. §§ 1983, 1985.

Plaintiffs declare intentions "to seek a nonpartisan elective position" without identification of such position. However, it is undisputed that the office is that of delegate to the Constitutional Convention provided in Act 2 of the 1972 Regular Session of the Louisiana Legislature, approved May 25, 1972, to be called and convened on January 5, 1973.

Mortillaro alleges that he had sought and obtained an advisory opinion from the Civil Service Commission for the City of New Orleans which held that he was prohibited by Article 14, Section 15(N)(7) of the Constitution of Louisiana of 1921, by Section 4–1504 of the Charter of the City of New Orleans and by Section 6 of the Code of Ethics of the City of New Orleans, Ordinance Calendar No. 2625, MCS, from seeking the aforesaid office.

Following review sought by Mortillaro, the Fourth Circuit Court of Appeal for the State of Louisiana on July 12, 1972 held that "Within the context of Art. 14, Sec. 15(N)(7) [of the Constitution of Louisiana] the position of delegate to this Constitutional Convention is a public office and a Civil Service Employee is prohibited from being a candidate for election thereto." Mortillaro v. Civil Service Commission, No. 5430. The Supreme Court of Louisiana denied review on July 17, 1972. Mortillaro v. Civil Service Commission, et al, 263 So. 2d 906.[3]

It should be noted that the state actions involved only the validity of the Civil Service Commission's advisory ruling. No constitutional issues were raised by Mortillaro in those actions.

Plaintiffs here, however, do raise constitutional issues and ask this Court to redress the deprivation under color of law by the State of Louisiana, the City of New Orleans, and agencies thereof, of a right or rights secured by the Constitution of the United States, and more particularly, Amendments 1, 5, 14 and 15 thereof.

Specifically, plaintiffs pray for the empaneling of a statutory Court to hear the matter, judgment declaring the Louisiana Constitutional and the City of New Orleans Charter and Ordinance provisions unconstitutional and injunctive relief against enforcement "of the state statute."

The originally named defendants were the State of Louisiana and the New Orleans City Civil Service Commissions. The individual members of the City Civil Service Commission and the City of New Orleans were made additional defendants by an amended complaint.

By joint stipulations filed at the hearing it is established that all plaintiffs have filed their statements of candidacy as required for qualification to run for election to the office of delegate to the Convention,[4] and that all plaintiffs, in their efforts to be elected, will participate and engage in those activities ordi-

---

1. On argument, counsel for plaintiffs acknowledged that the action is no longer being sought to be maintained as a class action.

2. See Minute Entry dated July 21, 1972.

3. Justice Barham, concurring, stated: "The result is harsh and I entertain grave doubt it was intended by the legislature. Thousands of citizens of this State—i. e. Civil Service personnel—are prohibited from participating in the Constitutional Convention and logic will not support this denial. However, the language of Act 2 of 1972 is unambiguous and Art. 14, Sec. 15(N)(7) La.Const. appears to control."

4. See the Temporary Restraining Order and the Amended Temporary Restraining Order entered herein on July 17th and 19th, 1972, respectively.

narily and usually associated with candidacy for an elective office, including:

a.) Public Announcement of candidacy in any of the available news media, Newspaper, Radio, Television, and the like;

b.) Distribute printed material, by hand, through the mails, and otherwise, announcing their candidacy;

c.) Make personal appearances before groups, individually or as a member of a panel;

d.) Join with other candidates to issue joint announcements, or to exchange support;

e.) Post signs announcing their candidacy;

f.) And, all such other activity which may become necessary and proper within the district which each candidate is registered.

(See Record Document No. 15).

g.) Will pay any pro-rata share or assessment by a political organization(s) or quasi-political organization, e. g. so-called Civic or Social Groups, for a place on their "ticket" or ballot to be distributed to the public and on which said ballot are listed candidates for other political office in the up-coming Democratic primary election, e. g. U. S. Senator, Candidates for the Louisiana State Supreme Court, Appellate, District and Juvenile Courts.

h.) Will take part in the political campaign of any other candidate who is seeking another office, as set forth in stipulation (g) above, when on the same ticket or ballot and will jointly contribute to the dissemination of any political material, e. g. flyers, broadsides etc., by paying for same and by actually participating in the delivery of said material to potential voters.

i.) Will work to disseminate this "ticket" or ballot in conjunction with other members on this ballot, their organizations, allies, friends and paid employees or agents, e. g. canvassing house to house, distribution at shopping centers and similar acts.

j.) Will actively seek a place on such a "ticket" ballot by courting the position thereon through whatever legal means necessary, e. g. appearing before a caucus.

k.) When making public appearances, or speeches, or attending rallies and similar political gatherings, will talk on, discuss and debate any and all issues concerned with the Constitution of the State of Louisiana, including by way of example and not of limitation, election laws, tenure of office of public officers, law relative to Home-Rule and all other aspects concerning the political involvement of municipal, parochial and state officers.

l.) Will engage in advertisement, including radio and television and newspaper to promote their candidacy.

m.) Will actively seek the endorsement of elected officials and seek the support of their political organizations.

n.) Will actively seek contributions to their campaign for office.

o.) Will engage in every and all acts whatsoever, necessary and proper, and in any way connected with political campaigning practices and methods and political activity with the end in view to obtaining the office for which the petitioners have respectively qualified all as are practiced by those persons seeking elective office in the United States of America and on a local, parochial, and State level at the time of this hearing.

(See Record Document No. 16).

In addition to oral argument, briefs were submitted by all parties and an amicus curiae brief was filed, under leave granted by the Court, on behalf of

the Louisiana Department of State Civil Service.

The defendants urge (1) that the Court lacks jurisdiction because the plaintiffs have failed to exhaust State administrative and judicial remedies; (2) that this Court should abstain under the rule of the Younger v. Harris sextet; (3) that no statute of statewide application is involved and if it is, because the City of New Orleans Charter and Code of Ethics Ordinance, being of local application, the matter is one that must be decided by a single judge Court; (4) that no substantial federal question is presented requiring adjudication by a statutory Court; (5) that the complaint fails to state a claim upon which relief can be granted and (6) that the State Constitutional and the City Charter and Ordinance provisions, under attack, are valid.[5]

We consider first the issues of whether or not a statute of statewide, rather than purely local, application is involved and, if the former, whether or not a substantial federal question is presented requiring adjudication by a statutory Court.

## II. STATEWIDE vs. LOCAL APPLICATION

Defendants contend that the provisions under attack have local rather than statewide application. Both the original and amended complaints pray that we declare unconstitutional Article 14, Section 15(N)(7) of the Constitution of Louisiana of 1921, Section 4–1504 of the Home Rule Charter of the City of New Orleans, and Section 6 of the Code of Ethics for the City of New Orleans, Ordinance Calendar No. 2625, Mayor Council Series, and that we enjoin defendants from enforcing said provisions.

■ Section 2281, Title 28, United States Code, provides for a three-judge court when the enforcement of a state statute is sought to be enjoined. While the term "statute" does embrace state constitutional provisions, American Federation of Labor v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873 (1946), it does not encompass municipal ordinances or state statutes, and thus state constitutional provisions, having only local application. Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1966).

The Louisiana Constitution of 1921 in Article 14, Section 15(A)(1) commands that a system of classified civil service be set up for the state and for cities having a population of over two hundred fifty thousand.[6] The provisions of Article 14, Section 15 are self-executing (Article 14, Section 15, (X) and reserve to the Legislature the right to amend or repeal "all existing laws relating to the State or City Civil Service System" or to adopt new laws, provided any amendments or new laws "are supplementary and not in conflict herewith." (Article 14, Section 15 (P) (6)). Actual administration of the system is governed by the remainder of that section. Setting a population level in excess of two hundred fifty thousand has the practical effect of limiting the section's application to the City of New Orleans.

---

5. The Motions to Dismiss and alternatively for Summary Judgment were carried along with the case on the merits. The defendants also contend that the action is not maintainable as a class action, but plaintiffs no longer seek to prosecute the action as a class action. See Footnote 1.

6. Article 14, Section 15(U) authorizes any city, and any parish governed jointly with one or more cities under a plan of government, having a population of more than ten thousand but less than two hundred and fifty thousand to accept the provisions of Section 15 by a majority vote of its qualified electors voting at a general or special election for such purpose. If the proposition carries, Section 15(U)(a) provides that "Section 15 and all of the provisions thereof shall thereafter permanently apply to and govern the city or city-parish, as the case may be, in the same manner and to the same extent as if said Section 15 and all its provisions had originally applied to such city or city-parish."

■ By the provisions adopted in Article 4, Chapter 15, Sections 4–1501 through 4–1505 of the Home Rule Charter of the City of New Orleans, New Orleans has recognized that the Louisiana Constitution governs the city's civil service system. Sections 4–1501, 4–1502 and 4–1503 set forth the composition, purpose and functions of the Department of Civil Service "as provided by applicable state law." There is no attempt to create any system separate from the one set up by the Louisiana Constitution. Section 4–1504 of the Charter establishes prohibitions as to certain political activity; it virtually tracks the language of Article 14, Section 15(N)(7) of the Louisiana Constitution. Thus the Charter merely sets forth an acknowledgment that the state constitutional provisions govern. Additionally, Section 4–1505 of the Charter reads: "Should the State cease to provide for a system of personnel administration applicable to the City, the provisions of Article VIII of this Charter shall immediately become operative." Article VIII, referred to above, creates a Department of Civil Service for the City of New Orleans. However, under Section 8–101 of Article VIII, the system created therein becomes effective "only in the absence of an applicable state law upon the same subject matter." Since there is state law in the form of the constitutional provision, this article is not operative and is only a "stand-by" article. See Civil Service Development in Louisiana, L. Vaughn Howard, Vol. III, pp. 147–150. It is clear that the source and existence of the civil service system under which plaintiffs labor is embodied in Article 14, Section 15 of the Louisiana Constitution. Therefore, it is the state constitutional provision which governs, and so it is the constitutionality of this provision with which we are concerned.

■■ It is settled that an attack on the constitutionality of a state constitutional provision of general application representing considered state policy requires the convening of a three-judge court. Since the plaintiffs herein are only allegedly aggrieved insofar as the state constitutional provision applies to City of New Orleans and its civil service employees, it could be argued that the state provision under attack is one having only local application. However, any determination we would make concerning the constitutionality of said provision would necessarily affect both city and state civil service employees thus affecting the general application and state-wide policy contained in the provision. Engrafted onto the state constitutional provision are the local ordinances, other than the stand-by provisions which have heretofore remained dormant. An attack on the operative city ordinances is equivalent to an attack on the state constitutional provision which, we have just concluded, has state-wide, rather than local, effect. So unless the plaintiffs' constitutional challenge to Article 14, Section 15(N)(7) of the Louisiana Constitution is wholly insubstantial, the entire matter is a proper subject for the statutory Court.

## III. SUBSTANTIALITY OF THE FEDERAL QUESTION

The defendants strenuously urge that the three-judge court dissolve itself on the ground that plaintiffs' suit has not presented this Court with a substantial federal claim. Relying on the doctrine of Ex parte Poresky, 290 U.S. 30, 54 S. Ct. 3, 78 L.Ed. 152 (1933), defendants contend that the constitutionality of the law now under attack has been sustained by the United States Supreme Court in United Public Workers of America v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L. Ed. 754 (1947), wherein similar provisions of the Federal Hatch Act survived a similar constitutional attack. Relying on the claimed erosion of the holding of *Mitchell* as evidenced by the decision of the Fifth Circuit Court of Appeals in Hobbs v. Thompson, 448 F.2d 456 (5th Cir. 1971), and various state court

decisions [7], the plaintiffs contend that there exists a substantial federal question and that the three-judge court should be maintained.

Since this matter was heard, a statutory Court sitting in the District of Columbia in the case of National Association of Letter Carriers, etc. v. United States Civil Service Commission, et al., 346 F.Supp. 578 (D.C.D.C.1972), entertained an action to declare unconstitutional the Federal Hatch Act on the grounds that the Act is vague, overly broad and in conflict with the First Amendment to the Constitution of the United States. That Court found that the case presented a substantial Federal question "in the light of current constitutional doctrine. [8]"

We hold that a substantial Federal question is presented in this cause and, therefore, it is properly one for adjudication by this statutory Court.

## IV. FAILURE TO STATE A CLAIM, LACHES

Since plaintiffs have charged that Article 14, Section 15(N)(7) of the Louisiana Constitution is unconstitutional on its face in that it deprives them of their federal constitutional rights, we conclude that the defendants' contention that the complaint fails to state a claim upon which relief may be granted is without merit.

Equally without merit is defendants' contention that plaintiffs' claims are barred by the doctrine of laches. Given the high regard which federal courts have for the vindication of constitutional rights, it is indeed questionable whether the doctrine of laches would ever be applied in such cases. Not only have defendants failed to cite any authority for the application of laches in this area of constitutional law, they have failed to show the unreasonable delay and prejudice which would give rise to a defense of laches.

The only remaining issues [9] other than a decision on the merits, are standing of the plaintiffs to bring this action, exhaustion of their state remedies and abstention by the Court.

## V. STANDING

It is hornbook law that standing to sue is an element of the federal constitutional concept of "case or controversy," which is itself a prerequisite for the exercise of jurisdiction by a United States Court. Defendants, again relying on United Public Workers v. Mitchell, supra, contend that the general threat of possible reprisal by the City Civil Service Commission to which these plaintiffs may be exposed by their participation as candidates in the election of delegates to the State Constitutional Convention does not make a justiciable case or controversy and does not give plaintiffs the requisite standing to sue. Yet in the area of constitutional law that has developed since *Mitchell*, courts have recognized that litigants who claim to be subject to unconstitutional regulation need not risk prosecution in order to test their rights. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (Part I); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964); Reed v. Giarrusso, 462 F.2d 706 (5th Cir. 1972); Hobbs v. Thompson, 448 F.2d 456, 460 n. 10 (5th Cir. 1971). That there exists a true case or controversy in cases of this

7. Plaintiffs cite DeStefano v. Wilson, 96 N.J.Super. 592, 233 A.2d 682 (1967); Bagley v. Washington Township Hospital District, 65 Cal.2d 499, 55 Cal.Rptr. 401, 421 P.2d 409 (1966); Minielly v. State, 242 Or. 490, 411 P.2d 69 (1965); Kinnear v. City and County of San Francisco, 61 Cal.2d 341, 38 Cal.Rptr. 631, 392 P.2d 391 (1964); Fort v. Civil Service Commission of County of Alabama, 61 Cal.2d 331, 38 Cal.Rptr. 625, 392 P.2d 385 (1964).

8. It does not appear from the opinion that the issue raised in this case, i. e. whether the case was properly one for a three-judge court, was in contest.

9. See Footnote 1 with respect to the class action issue.

nature was recognized in Gray v. City of Toledo, 323 F.Supp. 1281 (N.D.Ohio 1971).

## VI. EXHAUSTION OF STATE REMEDIES

■ Defendants further argue that the Court is without jurisdiction to hear the case because plaintiffs have failed to exhaust both state administrative and judicial remedies which defendants contend are available under Article 14, Section 15(O)(1) of the Louisiana Constitution and Article 1871 of the Louisiana Code of Civil Procedure, respectively. We noted at the outset that plaintiffs' claims were asserted under 42 U.S.C. § 1983 encompassed in 28 U.S.C. § 1343. The United States Supreme Court has routinely held that the federal remedy afforded by § 1983 is supplementary to state remedies, and that the latter need not be sought and refused in order for a federal district court to have jurisdiction over the claim. McNeese v. Board of Education, 373 U.S. 668, 671, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622, 624–625 (1963); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647; Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968). The pronouncements in those cases were not limited to the particular type of § 1983 claims asserted therein but are of general application. Hall v. Garson, 430 F.2d 430 (5th Cir. 1970). Thus the Court is not without jurisdiction over the plaintiffs' claims because of plaintiffs' failure to exhaust their state remedies, whether administrative or judicial. Hobbs v. Thompson, supra; Moreno v. Henckel, 431 F.2d 1299 (5th Cir. 1970); Hall v. Garson, supra.

## VII. ABSTENTION

■ Having determined that plaintiffs may assert federally protected rights without first exhausting state remedies, we next consider defendants' contention that we should exercise our discretion under the abstention doctrine and direct these plaintiffs to pursue their claims in state court particularly in light of the recent decisions of the Supreme Court in Younger v. Harris, supra, and its related cases. Generally speaking, a federal court whose jurisdiction has been properly invoked may abstain and avoid an unnecessary constitutional determination where it is possible that the federal decision might turn on unsettled issues of state law.

■ However, here there is no uncertainty in the Louisiana law with regard to the issues before this Court. Louisiana Courts have held that the particular article of the Constitution now under attack is clear and unambiguous,[10] Gremillion v. Department of Highways, 129 So.2d 805 (La.App. 1st Cir. 1961[11]), and that the position of delegate to the Constitutional Convention, for which plaintiffs have qualified is a public office within the context of Article 14, Section 15(N)(7) and that a civil service employee is prohibited from being a candidate for that position, Mortillaro v. Civil Service Commission, supra. Furthermore, the delay inherent in the abstention doctrine is unwarranted in this case for the election of delegates to the Constitutional Convention is scheduled for August 19, 1972. Unless the Younger v. Harris sextet dictates otherwise, this Court will exercise its jurisdiction.

The Court in *Younger* held that a federal district court may not enjoin a

10. Although Louisiana Courts have considered the constitutionality of other provisions found in Article 14, Section 15, we do not find that those Courts have passed upon the constitutionality of Section 15 (N)(7). See, e. g., Meaux v. Department of Highways, 228 So.2d 680 (La.App. 1st Cir. 1969), writ refused 225 La. 288, 230 So.2d 590; Higgins v. Louisiana State Penitentiary, etc., 245 La. 1009, 162 So.2d

343 (1964); Hays v. Louisiana Wildlife & Fisheries Commission, 243 La. 278, 143 So.2d 71 (1962); Marchese v. New Orleans Police Department, 226 La. 982, 77 So.2d 742 (1955); Konen v. New Orleans Police Department, 226 La. 739, 77 So.2d 24 (1954); Patorno v. Department of Public Safety, etc., 226 La. 471, 76 So.2d 534 (1954).

11. Certiorari denied June 29, 1961.

pending state prosecution unless the plaintiff can prove the existence of irreparable injury that is both great and immediate. 401 U.S. at 46, 91 S.Ct. at 751, 27 L.Ed.2d at 676. In Hobbs v. Thompson, supra, the Fifth Circuit recognized that the *Younger* decision was based on principles of comity and the consideration which federal courts are to give to the sovereign status of the individual states. Concerning *Younger*, Judge Goldberg stated: "[t]he opinion does not purport to extend beyond this traditional realm of comity and require across-the-board abdication of federal decisionmaking power in all manner of cases." 448 F.2d at 465.

Here, as in *Hobbs*, there are no pending state criminal or non-criminal proceedings; thus principles of comity which were significant to the outcome in *Younger* are absent. Therefore, *Younger* does not prevent us from exercising jurisdiction. In this respect the comments of Judge Goldberg in *Hobbs* are appropriate:

"To hold that *Younger* erects a general barrier to federal relief in a situation such as presented in the instant case would be to ignore the rationale of the opinion and to reject a long history of accepted jurisprudence. We simply do not think that *Younger* intended to proscribe completely the federal judicial role in the vindication of federal rights. To apply that decision outside its intended sphere—the well-established doctrine of comity restraints against federal interference with pending state criminal proceedings—would be in direct contradiction to the purposes of the Civil Rights Act as articulated by the Supreme Court in such decisions as Monroe v. Pape supra, [365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492], Zwickler v. Koota, supra, [389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444], and by our court in Moreno v. Henckel, supra. See also Perez v. Ledesma, supra, 401 U.S. 82, 91 S.Ct. 674, [27 L.Ed.2d 701] (Brennan, White, and Marshall concurring in part and dissenting in part). We

do not think that the Court in *Younger* intended to repeal judicially by rendering impotent a large portion of the remedial promise of that Act. We therefore hold that at least outside the comity sphere we are simply to continue to apply those traditional notions of restraint reflected in the doctrines of exhaustion and abstention." 448 F.2d at 466, 467.

## VIII. THE MERITS

The legislative Act calling the Constitutional Convention provides various methods for selection of the 132 member delegation. Pertinent here is the provision that one delegate shall be elected from each of the districts from which members of the House of Representatives of the Louisiana Legislature were elected at the last election for members of that body. Plaintiffs seek to be elected from some of such districts.

Qualifications for election as a delegate are that the delegate be at least eighteen years of age, a resident of the representative district from which he seeks to be elected at the time of qualification as a delegate candidate, and an elector of the state. Persons who may be holding office, by election or appointment, in governmental subdivisions of the State, if otherwise qualified, are eligible for election as a delegate. Qualification as a delegate candidate shall be without regard to party affiliation. Delegates shall be elected by qualified electors who may participate in the delegate election without regard to party affiliation.

All delegates are obliged to take a prescribed oath. The dual office-holding prohibitions of the Louisiana law are not applicable to the delegates who may also hold other elective or appointive public office. However, Section 1A(3) of the Act provides that ". . . . delegates elected from the representative districts shall be considered state elected officials within the scope of and subject to the provisions of Part III of Chapter 15 of the Louisiana Revised Statutes of

1950, . . . .," which is the Code of Ethics governing elected state officials and members of the Legislature of Louisiana.

The Convention is charged with formulation of a new State Constitution to be submitted to the electorate for approval or rejection. Delegates are required to meet in convention on January 5, 1973 to effect the permanent organization of the convention, on completion of which the Convention is required to adjourn until July 5, 1973, when it is mandated to reconvene to receive staff reports, hold hearings and draft the proposed new Constitution. The final draft must be completed not later than January 4, 1974.

Delegates are to receive a per diem of fifty dollars for each day of actual attendance at meetings of the Convention or its committees. No delegate may be paid a per diem after January 4, 1974. Delegates are prohibited from receiving any other compensation for work performed for the Convention from any source while serving as a delegate, but a delegate may, when engaged in regular and bona fide employment, accept compensation from his employer should the employer choose to pay the delegate's usual compensation while he is engaged in the work of the Convention.

We have previously noted that both the Louisiana Supreme Court and Court of Appeal, Fourth Circuit, have held, and we agree, that the position of delegate to the Convention is a public office and that a classified civil service employee, indeed Mortillaro himself, is prohibited from being a candidate for election thereto.

Both the Constitutional and the New Orleans Charter provisions under consideration prohibit a classified civil servant from being " . . . a candidate for nomination or election to any public office . . . ."

The State Supreme and Appellate Courts' rulings in Mortillaro's case make no mention of whether or not activities in which Mortillaro and his co-plaintiffs would engage in their campaigns for election were such as are proscribed.

Defendants have cited Gremillion v. Department of Highways, supra, wherein the constitutional provision was considered in the case of a highway department foreman who had been discharged upon a finding that he had solicited employees under his supervision to vote for his choice of a particular candidate for Governor. The Court found the Article of the Constitution [Article 14, Section 15(N)(7)] to be " . . . . clear and not ambiguous and specifically the Civil Service employee is denied the right to 'take *any* part * * * in any political campaign, except to exercise his right as a citizen to express his opinion privately, to serve as a commissioner or official watcher at the polls in any election, and to cast his vote for whom he pleases.' " 129 So.2d at 807.

The *Gremillion* court further said:

"In our opinion the meaning of 'political campaign' contemplates every effort made to insure the election of a nominee or the success of a political issue submitted to the people for determination by voting at an election. It encompasses the filing of intention to become a candidate, the financing of the campaign, the checking of poll lists, the placing of advertising in the newspapers, television and radio, and staffing and arrangement for headquarters and above all the solicitations of the voters by adherents of the candidate. . . . . The purpose of a political campaign insofar as an individual is concerned is to stimulate the adherents of a candidate to join the individual in securing the election of a candidate. . . . . Much of the success of a political campaign by an individual results from the solicitation by adherents of the office-seeker of the electorate." 129 So.2d at 808.

The facts here show that the plaintiffs intend to or would engage in just about every campaign and political activity of which one desiring to successfully seek election to public office

might conceive. In addition to providing that a civil service employee may not be a candidate for any public office, the proscribing provisions of the law under attack reach such activities.

It is suggested that the Federal counterpart of the provisions which we consider, the Hatch Act (18 U.S.C. § 61 et seq.),[12] served as a model for the Louisiana and City of New Orleans "Little Hatch Act." Whether it did or not is unimportant. The Federal, State and City enactments are designed to accomplish the same results—i. e. to promote efficiency and integrity and to maintain proper discipline in public service while protecting civil servants in their employment and from coercive and corrupt influence of political power abused.

The Hatch Act has been held constitutional. United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). See also Gray v. Macy, 239 F.Supp. 658 (D.Or.1965), reversed on other grounds; Palmer v. U. S. Civil Service Commission, 297 F.2d 450 (7 Cir. 1962); Engelhardt v. U. S. Civil Service Commission, 197 F.Supp. 806 (M.D.Ala.1961), aff'd. 304 F.2d 882 (5 Cir. 1962); Stack v. Adams, 315 F. Supp. 1295 (N.D.Fla.1970); Deeb v. Adams, 315 F.Supp. 1299 (N.D.Fla.1970); Gray v. City of Toledo, 323 F.Supp. 1281 (N.D.Ohio 1971).

The vagueness and overbreadth found in the Federal Hatch Act by the Court in *National Association of Letter Carriers*,[13] supra, was declared upon "a narrower issue . . . . which was specifically left unresolved by *Mitchell*." The Court there divided (the Circuit Court member of the Court, Judge George E. MacKinnon, dissented) on the question.

Judge Gesell, writing for the majority, said:

"There is an obvious, well-established governmental interest in restricting political activities by federal employees which was asserted long before enactment of the Hatch Act. Many federal employees have been prevented from running for political office and engaging in the more obvious forms of partisan political activity since the passage of the Civil Service Act in 1883.

"The Hatch Act provides in pertinent part that any employee of an Executive agency or an employee of the District of Columbia may not take an active part in political management or political campaigns of a partisan nature and is subject to removal or suspension without pay for violation. The appropriateness of this governmental objective was recognized by the Supreme Court of the United States when it endorsed the objectives of the Hatch Act. United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); cf. Oklahoma v. United States Civil Service Commission, 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794 (1947).

" . . . . This litigation focuses not on the merits of the objective of the Hatch Act but on the manner in which Congress defined the conduct it purported to prohibit in the name of 'political management or political campaigns.' The meaning and effect of the prohibitions measured against First Amendment standards is now properly raised by qualified plaintiffs having a direct interest as a class in the matter, and this admittedly troublesome constitutional issue can no longer be avoided.

Section 15 of the Act here challenged provides:

. . . the phrase 'an active part in political management or in political campaigns' means those acts of political management or political campaigning which were prohibited

---

12. See 5 U.S.C. § 7324 and Reviser's Notes thereto.

13. It is noted that the Court stayed its order granting injunctive relief pending determination by the Supreme Court of the United States.

on the part of employees in the competitive service before July 19, 1940, by determinations of the Civil Service Commission under rules prescribed by the President. § 7324(a).

This definition is ambiguous and unsatisfactory. It incorporates by reference over 3,000 rulings made by the Commission between 1886 and 1940. These rulings, which were not before the Congress when the Act was passed, have now been assembled and are in the record of this case. When examined they have a sweep and indefiniteness that no one would even attempt in these days to defend if analyzed against the strictures of the First Amendment."

" . . . . The defect lies not in the basic underlying purpose to limit certain partisan political activities by federal employees but rather in its drafting. Prohibitions are worded in generalities that lack precision. There is no standard. No one can read the Act and ascertain what it prohibits. Neither the Commission nor any other agency was given rule-making power. Indeed even those most intimately concerned with its enforcement are in doubt and have sought legislative clarification." (Footnotes omitted).

But the vagueness and overbreadth found by the District of Columbia Court as illustrated by the eight questions posed in the majority opinion (page 583 of 346 F.Supp.) are simply not present in the constitutional provision which we consider.

We are not confronted with language "ambiguous and unsatisfactory" found by the District of Columbia Court to exist in Section 15 of the Hatch Act, 54 Stat. 771. And as found by that Court there is no defect in the basic underlying purpose to limit certain partisan political activities by civil servants. Nor is there present here the drafting defect determined to exist in Section 15 of the Hatch Act.

Here a civil servant is prohibited, in specific language, from being a candidate for nomination or election to a public office. He is further specifically prohibited from making political speeches or statements in behalf of any candidate, faction or party as a part of any political campaign for nomination or election of public officers.

The terms "candidate", "nomination", "election" and "public office" require no further definition. Persons of reasonable intelligence, as civil servants must be, cannot be misled either in the legal or general connotation of those words. No civil servant should require further definition of a "political speech" or a "political campaign." Indeed, to hold that such further definition of those terms, as employed in the constitutional provision, is required would, we believe, be insulting to such servant's intelligence and possibly subject to question his qualifications for the employment he holds.

The plaintiffs rely heavily on Hobbs v. Thompson, 448 F.2d 456 (5 Cir. 1971) wherein an ordinance of the City of Macon, Georgia, providing that no employee of the city's fire department:

"shall take an active part in any primary or election, and all [such] employees are hereby prohibited from contributing any money to any candidate, soliciting votes or prominently identifying themselves in a political race with or against any candidate for office."

was held constitutionally defective for vagueness and overbreadth.

In *Hobbs* the city employees were ordered, but failed, to remove automobile bumper stickers evidencing support for a particular candidate in Georgia's General Assembly primary election. Sanctions were imposed and the suit asserting a cause of action under 42 U.S. C. § 1983 ensued.

Judge Goldberg writing for the Court said:

"By proscribing all forms of political activity, the Macon scheme goes

far beyond the provisions of the Hatch Act upheld in *Mitchell*. Displaying a bumper sticker is a far cry from actively participating in organized political affairs. It is more akin to a personal expression of political opinion, left untouched by *Mitchell*, than to partisan concerted activity on behalf of a party. *See* Wilson v. United States Civil Serv. Comm'n., *supra* [136 F.Supp. 104]." 448 F.2d at 472.

Unlike the broad general terms of the Macon ordinances, the Civil Service provisions which we consider here are quite specific and satisfy the rule that the Constitution requires that the conflict between legislative power and individual rights be accommodated by legislation drawn more narrowly to avoid the conflict. United States v. Robel, 389 U.S. 258, 268 n. 20, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967), cited in *Hobbs*, supra, 448 F.2d at 472, 473.

■ In the circumstances of this case the pertinent proscriptions are that no classified civil service employee shall be " . . . a candidate for nomination or election to any public office or shall make any political speech or public political statement in behalf of any candidate, faction or party, as a part of any political campaign for nomination or election of public officers . . ." It is noted also that Article 14, Section 15(N)(3) of the Louisiana Constitution specifically prohibits classified employees from, directly or indirectly, paying or promising to pay any assessment, subscription or contribution for any political organization or political purpose or solicit or take part in soliciting any such assessment, subscription or contribution. Similar provisions are found in the Charter of the City of New Orleans, Article VIII, Section 8–112(1)(b).

What an employee may not do is clearly and unambiguously set forth. Gremillion v. Department of Highways, supra. The vagueness and overbreadth found in the Macon ordinance does not exist in the Louisiana Constitutional and New Orleans Charter provisions.

The Federal Hatch Act in comprehensive language reprobates the taking by an employee of "any active part in . . . political campaigns" and like the prohibitions under consideration reserves to the employee the right to vote as he chooses and to privately express his opinion.[14] *Mitchell*, supra.

The record in this case discloses that the plaintiffs are candidates for public office and will engage in a partisan political campaign in which they will make speeches and public statements in their behalf and on behalf of others who may be candidates for the same office, as well as for candidates for public offices other than delegate to the Convention, to be voted on in the same election [15] in which plaintiffs will submit their candidacies. Plaintiffs will also pay their pro rata share of any contribution or assessment by political or quasi-political organizations for endorsement by and for a place on the tickets or ballots of such organizations along with candidates endorsed for United States Senator and Supreme Court, Appellate, District and Juvenile Court judgeships.[16]

We conclude that Article 14, Section 15(N)(7) of the Louisiana Constitution is constitutional.

Consistent with the foregoing, judgment was entered herein on August 7, 1972.

14. The Louisiana Constitutional and New Orleans Charter provisions also allow an employee to serve as a commissioner or watcher at the polls in any election. In addition thereto, under the New Orleans Charter an employee may be a member of a factional political club or organization, but not an officer or member of any committee thereof.

15. The Convention delegate election will be held on August 19, 1972 along with party primaries for U.S. Senators and Representatives and Supreme Court, Court of Appeals, District and Juvenile Courts judgeships.

16. See Record Documents Nos. 15 and 16.