Dear Mayor Fontenot:
This office is in receipt of your request for an opinion of the attorney General in regard to an ordinance relative to a Town employee becoming a candidate for an elective office for the Town. The ordinance provides as follows:
 WHERAS, Town of Mamou employees provide services for the Town as directed by the Mayor and Board of Aldermen, and/or the Town's chief of Police in a professional, nonpartisan manner. It is imperative that no Town of Mamou employee participate in any political activity that may call into question the integrity of the work of the Town's elected officials; and
 WHEREAS, an employee who is in doubt about the appropriateness of a particular conduct should consult with the Town Clerk in advance; therefore,
 BE IT ORDAINED that in the event an employee of the Town of Mamou desires to become a candidate for a Town of Mamou elective office, he or she shall send a written request for a leave of absence without pay to the Mayor and Town Clerk. The request should identify the office the employee wishes to seek and estimate of the amount of leave that will be necessary. No Town of Mamou employee shall become a candidate for a Town of Mamou elective office unless such leave without pay is granted and the employee is actually on leave without pay; and
 BE IT FURTHER ORDAINED that no employee who is a candidate for a Town of Mamou elective office, shall engage in activities in pursuit of office while on Town time or use Town equipment such as office space, telephone, fax machines, computers or supplies in the pursuit of that office.
You ask the following questions:
1. Is the enclosed ordinance constitutional?
 2. As Mayor my interpretation is that since no provisions are either written or implied, an employee who was unsuccessful in his or her quest for a local elected office can, should, or must be reinstated to the position with the same salary the employee held when granted a leave of absence for the purpose of seeking the office.
The ordinance in question requires an employee of the Town of Mamou who desires to become a candidate for a town elective office to request and be granted a leave of absence without pay. Under Louisiana's constitution, Art. 10, Sec. 9, employees in the classified service are prohibited from participating or engaging in political activity:
 (A) No member of a civil service commission and no officer or employee in the classified service shall participate or engage in political activity; be a candidate for nomination or election to public office except to seek election as the classified state employee serving on the State Civil Service Commission; or be a member of any national, state, or local committee of a political party or faction; make or solicit contributions for any political party, faction, or candidate; or take active part in the management of the affairs of a political party, faction, candidate, or any political campaign, except to exercise his right as a citizen to express his opinion privately, to serve as a commissioner or official watcher at the polls, and to cast his vote as he desires.
 (B) No person shall solicit contributions for political purposes from any classified employee or official or use or attempt to use his position in the state or city service to punish or coerce the political action of a classified employee.
 (C) As used in this Part, `Political activity' means an effort to support or oppose the election of a candidate for political office or to support a particular political party in an election. The support of issues involving bonded indebtedness, tax referenda, or constitutional amendments shall not be prohibited.
LSA-Const. Art. 10, Sec. 9 (1974). This provision of the constitution was found to be constitutional under the U.S. Constitution in Mortillaro v.State of LA, 356 F. Supp. 521 (E.D. LA, 1972). The court considered whether the Hatch Act served as a model, and stated, "Whether it did or not is unimportant. The Federal, State and City enactments are designed to accomplish the same results — i.e. to promote efficiency and integrity and to maintain proper discipline in public service while protecting civil servants in their employment and from coercive and corrupt influence of political power abused." Id. at 532.
The court found that the law was very specific and satisfied "[t]he rule that the Constitution requires that the conflict between legislative power and individual rights be accommodated by legislation drawn more narrowly to avoid conflict." Id. at 534.
For the ordinance at issue, we cannot determine whether a court would find the local law constitutional or not. When compared to Louisiana's constitutional prohibition for classified employees, Art. 10, Sec. 9, it is our opinion that the ordinance could be more specific, such as providing whether the local law applies only to classified town employees, as opposed to unclassified employees. Under Louisiana's constitution, unclassified employees are not subject to Art. 10, Sec. 9's political activities prohibition. See, Atty. Gen. Op. #76-1113, copy enclosed herein.
Another area where the ordinance can be more specific is in stating clearly and unambiguously what an employee may not do, rather than merely providing, "[a]n employee who is in doubt about the appropriateness of a particular conduct should consult with the Town Clerk in advance". For guidance, see Mortillaro, supra, copy enclosed herein, where the Home Rule Chapter of the City of New Orleans recognized that the Louisiana constitution governs the city's civil service system and followed the language of the constitution, Art. 10, Sec. 9, in prohibiting political activity in the city civil service system of New Orleans. Thus, either referring to the provisions of Art. 10, Sec. 9 of the 1974 La. Constitution or tracking the specific language applicable to the town, such as the definition of political activity, will provide a more clear and specific ordinance that has a better chance of withstanding a constitutional challenge.
All of that being said, we add that all local ordinances are presumed to be constitutional unless and until they are challenged and struck down,Manuel v. Evangeline Parish Police Jury, 295 So.2d 600, (La. 3 Cir., 1974). Additionally, unclassified employees serve at the will of the appointing authority and can be fired or place on leave with our without pay by the appointing authority at his discretion. See for example, Atty. Gen. Op. #01-342, copy enclosed herein. We also must point out that this ordinance appears to be a voting change which is subject to approval under Section 5 of the Voting Rights Act of 1965. If the ordinance has not been administratively precleared, then it can not be enforced until such time. For information about Section 5 of the Voting Rights Act, we suggest you visit http://www.usdoj.gov/crt/voting/sec_5/about.htm and/or write to the U.S. Department of Justice for information at Chief, Voting Section, Civil Rights Division, Room 7254-NWB, Department of Justice, 950 Pennsylvania Ave., NW, Washington, DC 20530.
We hope this opinion provides you with information and guidance with regard to the town's ordinance.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 ___________________________ ANGIE ROGERS LAPLACE Assistant Attorney General
RPI/ARL;mjb Enclosure
OPINION NUMBER 76-1113
September 21, 1976
100 SCHOOLS SCHOOLS DISTRICTS
The school board's policy of requiring employees seeking public office to take a leave of absence while campaigning for office and requiring employees elected to public office to resign is unconstitutional on its face, violating the Equal Protection Amendment and may be unconstitutional as applied violating the First Amendment of United States Constitution.
Art. 1, Sec. 7 of La. Const. 1974 Art. X Sec. 9(A) La. Const. 1974 Art. X Sec. 2 B (9) La. Const. 1974 U.S. Const. Amend. I
R.S. 17:81 U.S. Const. Amend. XIV
Mr. James Lynn Davis District Attorney P.O. Box 1008 Court House Building Many, Louisiana 71449
Dear Mr. Davis:
Thank you for your opinion request in regard to a parish school board enforcing regulations with respect to school employees and their political activities. You state the following school board policy:
 1. Any teacher or other school employee who qualified to run for an elective office must take leave of absence during the semester in which he or she is campaigning for office.
 2. Any teacher or other school employee who is elected to a state office must resign his or her position with the parish school system.
I direct your attention to Article X Section 9(A) of the Louisiana Constitution of 1974 which sets forth the restraints on state employees political activities, to wit:
 Section 9. (A) Party Membership; Elections. No members of a Civil Service Commission and no officer or employee in the classified service shall participate or engage in political activity; be a candidate for nomination or election to public office except to seek election as the classified state employee serving on the State Civil Service Commission; or be a member of any national, state, Mr. James Lynn Davis or local committee of a political party or faction; make or solicit contributions for any political party, faction, or candidate; or take active part in the management of the affairs of a political party, faction, candidate, or any political campaign, except to exercise his right as a citizen to express his opinion privately, to serve as a commissioner or official watcher at the polls, and to cast his vote as he desires.
I also refer you to Article X Section 2 B (9) of the Louisiana Constitution of 1974 which states:
 (B) Unclassified Service. The unclassified service shall include the following officers and employees in the state and city civil service:
 (9) Teaching and professional staffs, and administrative officers of schools, colleges and universities of the state, and bona fide students of those institutions employed by any state, parochial, or municipal agency; (emphasis supplied)
The above constitutional provisions indicate that teachers, etc., may engage in political activities in that they are considered unclassified employees and any regulation to the contrary must fall.
Also pertinent to our discussion is R.S. 17:81 which states in part:
 Each school board is authorized to make such rules and regulations for its own government, not inconsistent with law or with the regulations of the Louisiana State Board of Education, as it may deem proper.
It is well settled that a school board has the implied power to make and enforce reasonable rules and regulations for the efficient conduct of the schools. The question of what is reasonable is often a difficult one. It is generally presumed that a board has acted reasonably and that the burden of proof is placed upon the party contesting the rule.
In spite of the vast discretion given to local school boards, considerations of first amendment freedoms and equal protection must be reckoned with.
The First Amendment of the U.S. Constitution is applicable to the school board regulations. This amendment has been cited in the jurisprudence as a protection for political activities of school employees. "The complete ban on the right of a teacher to express political opinions and to engage in political activity is inconsistent with the first amendment guarantee of freedom of speech, press, assembly and petition." Montgomery v. White, 320 F. Supp. 303, 304 (E.D.Tex. 1969).
In Simcox v. Board of Education of Lockport T.P., 433 F.2d 40, 41 (7th C.R. 1971), the court stated that a public employee can not be discharged or penalized because of his exercise of his right to freedom of speech as guaranteed by the First Amendment of the U.S. Constitution.
Another case relevant to our discussion is Rackley v. School DistrictNo. 5 Orangeburg, S.C., 258 F. Supp. 676, 684, (S.C. 1966). In this case the court said that the "discretionary power of the board must not be exercised in an arbitrary, capricious or discriminatory manner so as to deprive a teacher of personal liberties secured by the U.S. Constitution and the exercise of such power must not curtail, impinge or infringe upon freedom of political expression or association or any other constitutionally protected right."
Based on the above jurisprudential authority it is the opinion of this office that enforcement of said regulations by the local school board may violate the First Amendment of the U.S. Constitution and Article I
Section 7 of the Louisiana Constitution of 1974.
It is also the opinion of this office that the school board regulations are invalid on their face in that they violate the Equal Protection Clause of the U.S. Constitution.
Under the traditional equal protection test where no fundamental rights are involved, if the state's classification has a reasonable basis or is rationally related to the achievement of a legitimate state goal, the state action will survive an equal protection attack. However, "If a law has no other purpose than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it is patently unconstitutional." United States v. Jackson, 390 U.S. 570, 581,88 S.Ct. 1209, 1216, 20 L.Ed.2d 138 (1968).
It is the opinion of this office that the school board regulations create a classification which constitutes an invidious discrimination denying school employees equal protection of the laws. The school board can not compel school employees who choose to exercise their fundamental rights to take leave of absence or resign without considering whether an employee's political activities impairs his ability to perform his job. Therefore it is our opinion that the school board regulations are patently unconstitutional and must fall.
This opinion would not preclude the school board from enforcing a policy that a leave of absence or resignation would be required of any teacher, etc., engaged in any activity which impaired or prevented said individual from performing his duties. Whenever the activity involves civil rights, it would be prudent for the school board to hold a "due process" hearing in the matter before taking action to avert possible civil liability in (42 U.S.C. § 1983) civil right cases.
If this office can be of any further assistance to you in the future, please do not hesitate to call on us.
Very truly yours,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 By: __________________________ A. Mills McCawley Assistant Attorney General
AMM/grg